REDMON and others vs. THE PHŒNIX FIRE INSURANCE COMPANY.

*January 15 — February 8, 1881.*

INSURANCE AGAINST FIRE. *(1) What are incumbrances? (2) Pleading breach of warranty as to incumbrances.*

In an action on a policy of insurance on a mill and machinery, the answer was, that, by their application for insurance, plaintiffs represented and warranted that at the time the policy was issued there was but $5,000 incumbrance on the property, whereas in fact there were incumbrances thereon largely in excess of that sum; but the nature of such additional incumbrances was not averred. Plaintiffs went to trial without demurrer or motion to make the answer more definite and certain. *Held,*

1. That a subsisting lien of a mechanic or material man, for which a petition has been filed, *is an incumbrance*, within the ordinary meaning of the word.

2. That, under the pleadings, it was error to reject evidence offered by defendant of such an incumbrance existing at the time of the application, and not mentioned therein.

APPEAL from the Circuit Court for *Monroe* County.

Action upon an insurance policy. The case is thus stated by Mr. Justice CASSODAY:

"The complaint sets out the substance of a policy of insurance for $5,000, issued by the defendant to the plaintiffs, and a portion of the application therefor, upon their steam flouring mill in Prescott, and the machinery and fixtures therein (exclusive of boilers and engines), and on the stock of wheat and flour in said mill; and it alleges performance of the conditions on the part of the plaintiffs, the accidental destruction by fire, and the required notice and proofs of loss, and failure to pay, and refers to the policy annexed thereto as forming a part of the complaint. In addition to denials, the answer, among other things, sets out some of the terms of the application, and, among other things, alleges 'that in said application it was expressly agreed by the plaintiffs, and said plaintiffs represented and warranted in and by said application and policy, that at the time said policy was issued there was but $5,000 incumbrance upon said mill, mill gearing, machinery and fixtures, whereas there were at that time, as defendant is informed and believes true, incumbrances thereon largely in excess of said sum of $5,000, and to the amount of $16,000, or thereabouts, which said plaintiffs well knew.' The answer further 'denies any liability whatever to said plaintiffs on said policy of insurance, by reason of the aforesaid and other false representations, breaches of warranty and agreements in said application and policy contained, whereby said policy was void as by the express terms thereof provided, and on account of the concealment by plaintiffs of facts material to the risk, known to the plaintiffs and unknown to said defendant;' and it asks to have the policy delivered up and cancelled.

"The policy contains the following clauses: 'For further particulars, reference is had to application and survey No. 2277, which is made part of this policy.' 'If an application, survey, plan or description of the property herein insured is referred

to in this policy, such application, survey, plan or description shall be considered a part of this contract, and a warranty by the insured, and any false representation by the assured of the condition, situation or occupancy of the property, or any omission to make known every fact material to the risk, or an overvaluation, or any misrepresentation whatever, either in a written application or otherwise, . . . then, and in every such case, this policy shall be void.'

"The application and answers so referred to in the policy, and signed by the plaintiffs, were put in evidence, and contained, among other things, the following questions and answers: *Questions.* '24. What incumbrance, if any, is now on said property? If mortgaged, what is the whole cash value of the property mortgaged? Is there any insurance by the mortgagee? If so, what amount?' *Answers.* '24. Five thousand dollars. No.'

"After the plaintiffs rested, the defendants called the plaintiff *Elijah N. Redmon*, who testified that the $5,000 incumbrance mentioned in the answer to question 24 was a mortgage to Copp. Thereupon the defendant offered in evidence a notice of taking the depositions of three witnesses at Indianapolis, August 29, 1877, and the admission of the service thereof August 1, 1877, and no objection was made to its form or manner of service; which offer was stated to be for the purpose of establishing the fact stated in the answer, that there was, in addition to the $5,000 incumbrance mentioned in the application, some $10,000 or $12,000 more incumbrance thereon. An objection on the ground that it was not admissible under the allegations in the answer, was sustained. The defendants, to further maintain and prove the issues on their part, successively offered to introduce the three depositions taken under said notice, for the purpose of showing the incumbrances on said mill. These depositions were to the effect that Nordyke, Morman & Co., in the spring of 1875, contracted to manufacture and sell to the plaintiffs certain ma-

chinery for said mill, for which they agreed to pay about $16,000; and that the same, together with a large amount of extras, were manufactured, and began to be shipped to the plaintiffs under the contract, June 23, 1875, and were put up and used in and upon said mill, under the superintendence of Nordyke, Morman & Co., and that there was still due them, on account of said machinery, about $13,000, for which they had filed a mechanic's lien in Pierce county, Wisconsin. An objection taken by the plaintiffs to this evidence was sustained. The defendants, further to maintain and prove the issues on their part, offered in evidence a certified copy of a mechanic's lien on the property in question, filed in the office of the clerk of the circuit court for Pierce county, June 21, 1876 (seven days prior to the contract of insurance in question), by Nordyke, Morman & Co., for and on account of such machinery so provided by them and put in said mill for the same purpose stated, showing a full copy of such mechanic's lien, recorded and docketed; to which the plaintiffs objected, and the objection was sustained. Thereupon the defendant asked leave, upon terms or otherwise, to amend its answer by striking out the words ' and for the purpose of establishing a counterclaim;' to which the plaintiffs objected, and the objection was sustained. To each of these different rulings of the court the defendants excepted, and thereupon rested; and the court directed a verdict for the plaintiff."

From a judgment in pursuance of the verdict, the defendant appealed.

*J. W. Lusk*, for the appellant, argued, among other things, that the evidence offered by the defendant to prove the existence of incumbrances other than those stated in the application, was material, and that a mechanic's lien is an incumbrance within the meaning of the application. *Hinman v. Ins. Co.*, 36 Wis., 159; *Ryan v. Ins. Co.*, 46 id., 675; *Davenport v. Ins. Co.*, 6 Cush., 340; May on Ins., 317; *Wilbur v. Ins. Co.*, 10 Cush., 446; *Stout v. Ins. Co.*, 12 Iowa, 371.

Such evidence was admissible under the allegations of the answer, which are to be liberally construed, especially when the objection is purely technical, and is made for the first time at the trial. *Hazleton v. Union Bank,* 32 Wis., 43; *L. E. Church v. Gristgau,* 34 id., 328; *Teetshorn v. Hull,* 30 id., 162; *White v. Spencer,* 14 N. Y., 247; *Wright v. Hooker,* 10 id., 59; *Conaughty v. Nichols,* 42 id., 85; 2 Wait's Pr., 332, 334.

For the respondents there were separate briefs by *J. S. White,* their attorney, and *Vilas & Bryant,* of counsel, and oral argument by *Wm. F. Vilas:*

1. The alleged mechanic's lien, if it existed, was not a breach of the stipulation implied by the answer to the interrogatories in the application. The word incumbrance is there used in its popular sense. It is true that a covenant against incumbrances in a conveyance of land is a guaranty against *the existence* of any charge upon it which would compel the grantee to pay money to relieve the land; and in that connection the term would include rights of dower inchoate or contingent as well as fixed, an assessed tax, a charge in a last will, a vendor's lien in equity, and many other claims. *Wright v. Young,* 6 Wis., 132; *Peters v. Myers,* 22 id., 602. But it is otherwise in an application for insurance, where the purpose of the inquiry is only to give the company general information in regard to the extent of the interest of the insured, as affecting what is called the " moral hazard." The existence of an incumbrance adds nothing to the risk of accidental or honest loss, and can in no case take anything from the insurer. It cannot be intended of such an inquiry that it demands an exposition of every circumstance which may impose a charge upon the land. In the popular sense the term incumbrance is synonymous with mortgage, and it is so used in the application. In the interrogatories numbered 24, the two terms are used interchangeably. 2. Evidence of the existence of such a lien was inadmissible under the pleadings. The allegations of the answer in this

regard are of a mere *conclusion* that there were incumbrances in excess of the stipulated $5,000, without in any way indicating of what character they might be. No *facts* are averred. *Clay F. & M. Ins. Co. v. Wusterhausen*, 75 Ill., 285; *Ramsay M'f'g Co. v. Ins. Co.*, 11 U. C. Q. B., 516; *K. & L. Mut. Ins. Co. v. Southard*, 8 B. Mon., 634, 645; *Mulry v. Ins. Co.*, 5 Gray, 541; *Williams v. Ins. Co.*, 54 N. Y., 577; Wood on Ins., sec. 495; *Babb v. Mackey*, 10 Wis., 376; *Baker v. Bailey*, 16 Barb., 57. The defendant occupied the same position with respect to that claim that the alleged lien claimants would have been obliged to take, had they attempted to assert it; and the counterclaim in this action should have stated the facts with the same particularity that would have been required in a complaint to establish the lien.

CASSODAY, J. Two questions are presented for consideration: Was the evidence to prove the existence of a mechanic's lien of several thousand dollars on the property in question properly excluded by reason of the insufficiency of the answer? Was the mechanic's lien an incumbrance, within the meaning of that word as used in the application for the insurance?

It is urged on the part of the respondents, that, in order to entitle the defendants to introduce the evidence offered, they should have alleged in their answer such facts as it would have been necessary to allege in a complaint by Nordyke, Morman & Co. to enforce the lien. Of course, as urged by counsel, the statute requires the answer to contain, in order to make it available, "a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition." Section 2655, R. S. But the criticism is, that the answer "avers no fact; asserts only the pleader's conclusion that there were 'incumbrances' on the property in excess of the stipulated $5,000, without so much as indicating of what character they might be, much less

stating facts from which the court could perceive that any existed." Good pleading undoubtedly required a statement of the nature of the incumbrances, and when and in whose favor they were incurred. But the question is not, whether this is a model answer, but whether it was so defective as to authorize the exclusion of the evidence. It is to be remembered that, "in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed with a view to substantial justice between the parties." Section 2668, R. S.; section 21, ch. 125, R. S. 1858. The liberality here indicated has been sanctioned by this court from the first. *Flanders v. McVickar*, 7. Wis., 372; *Robson v. Comstock*, 8 Wis., 372; *Morse v. Gilman*, 16 Wis., 504. So this court has frequently held that, upon objection to receiving any evidence in support of a complaint or answer, taken for the first time at the trial, the pleading will be more liberally construed than where it is formally demurred to on the same ground. *Luth. Ev. Church v. Gristgau*, 34 Wis., 328; *Hazleton v. The Bank*, 32 Wis., 34; *Teetshorn v. Hull*, 30 Wis., 162. We are also to remember that evidence is not to be excluded merely because a pleading is "indefinite or uncertain." The remedy in such case is by motion to make the pleading more definite and certain, under section 2683, R. S.; and even a demurrer in such cases will not lie, much less an objection to evidence on the trial. *Flanders v. McVickar*, 7 Wis., 372; *Morse v. Gilman*, 16 Wis., 531; *Grannis v. Hooker*, 29 Wis., 65; *People v. Ryder*, 12 N. Y., 433; *Prindle v. Caruthers*, 15 N. Y., 425. In New York the time for making such motion is limited to twenty days by rule. 2 Wait's Practice, 500. This is in harmony with the spirit of our statute providing for the waiver of certain defects if not corrected within twenty days. Sections 2654, 2660, 2685, R. S. Counsel cite *Thurber v. Jones*, 14 Wis., 16, in support of the claim that this answer was so defective that the court was authorized to exclude the testimony. The similar allegation

there was, " that the defendant is indebted to the plaintiff for moneys by the defendant received from and for the use of the plaintiff," in the sum of $23.56; but Cole, J., in giving the opinion said: "Perhaps this cause of action might support a judgment for the amount of money thus alleged to have been received." The second count, however, was held to be fatally defective, as it did not allege ownership, and hence the reversal.

· In *Grannis v. Hooker*, 29 Wis., 65, the same question arose, and the opinion was written by the same learned judge; and, although he makes no reference to *Thurber v. Jones*, yet the court, through him, fully sanctioned the claim " that all it is necessary the complaint should contain is substantially an allegation that the defendant has received a certain amount of money to the use of the plaintiff, as in the old form of a declaration in *indebitatus assumpsit*;" and it was distinctly held " that the facts which, in the judgment of the law, create the indebtedness or liability, need not be set forth in the complaint." Page 67.

In *Schmidt v. Pfeil*, 24 Wis., 452, it was held that an allegation that the plaintiff had " necessarily paid out a large sum of money in endeavoring to be cured," etc., " was sufficient to admit evidence of the amount so expended by plaintiff for medical services;" and that, if anything more was desired by the defendants, " they should have moved to have the complaint made more definite and certain."

In *Pettit v. Hamlyn*, 43 Wis., 314, it was held that " where there is an averment, in general terms, of an agreement to convey, it must be assumed that it was a valid agreement; and it is error to reject all evidence under the complaint for its failure to expressly allege an agreement in writing, even though the answer denies such an agreement."

Decisions of other states, under statutes differing more or less from our own, of course are inapplicable. A motion to have the answer made more definite and certain would prob-

ably have prevailed; but no such motion having been made, and eighteen months having elapsed after answer and before trial, and depositions having been taken on due notice in a distant state to establish the allegation of excessive incumbrance upon the property, we must, in harmony with the spirit of the decisions of this court, hold that objections taken for the first time at the trial, that the allegations of such incumbrance were insufficient to admit the evidence offered, came too late.

. This brings us to the question whether a mechanic's lien is an incumbrance. It is in effect conceded by counsel for the respondents, " that a covenant against *incumbrances* in a conveyance of land is a guaranty against the existence of any charge upon it, which will compel the grantee to pay money to relieve the land," and hence includes a mechanic's lien; but it is insisted that in this application " the word 'incumbrance' is used in its popular and not its technical sense." No case has been cited making such distinction in the use of the word " incumbrance." Webster defines an " incumbrance" to be " a burdensome and troublesome load;" and again, " a burden or charge upon property; a legal claim or lien upon an estate." It will hardly be claimed that Webster did not define the word for the use of the populace, or that he only intended such definition to include mortgages. Certainly, judgments duly rendered and docketed must be regarded as incumbrances, as used in popular speech. Is not the same true with respect to a mechanic's lien? It would seem to be impossible to conceive of any motive which would induce an insurance company, at the time of an application for insurance, to ask whether there were any incumbrances on the property by way of mortgage, which would not be equally controlling as to incumbrances by way of judgment or mechanic's lien. All such incumbrances affect what counsel called the " moral hazard." In this respect, such incumbrances are wholly unlike a highway or right of way. It is true, as stated by counsel, that " the existence of an incumbrance adds nothing to the risk of *accidental or hon-*

*est* loss," but it is not so certain that it " can in no case take anything from the insurer." If it be conceded that every loss is " accidental or honest," then it might be true. But many of the stipulations and statements required in the applications for insurance are to secure risks in which there shall be no motive for intentional or dishonest loss. Obviously, the inducement to bring about loss by fire would be far greater in one who is insolvent, having an insurance upon property incumbered for more than it is worth, than in one free from debt and 'perfectly responsible. Such questions, put to the applicant for insurance, are obviously to secure a declaration from him that he at the time is free from any temptation to bring about an intentional loss, in case the company issues the policy. It is not a prayer, but rather a declaration, forced by the company, to the effect that the assured will not be led into temptation by the issuing of the policy. Such being the motive for putting the question, it would seem to be difficult in this case to so construe the language as to hold that the company merely intended to ask, and the assured merely intended to answer, concerning incumbrances by way of mortgage, and no other incumbrances.

No reported case has been cited involving the precise question here presented, nor any affirming the distinction in the use of the word incumbrance here claimed; and it seems to us that such a distinction would be extremely technical and overnice, if not forced. The statute provides that " every person who, as principal contractor, performs any work or labor, or furnishes any materials, in or about the erection, construction, etc., . . . of any dwelling house or other building, or of any machinery erected or constructed so as to be or become a part of the freehold upon which it is situated, '. . . shall have a lien thereupon, and upon the interests of the owner of such . . . building, machinery, etc., . . . in and to the land upon which the same is situated, or of the person causing such manual labor to be done, . . . and such lien

shall be prior to any other lien which originates subsequent to the commencement of the construction . . . of or upon such building, machinery, etc., . . . and may be enforced as provided in this chapter." Section 3314, R. S. Under this statute it was held by this court that such lien takes precedence of liens of any other kind (as by mortgage, judgment, and the like) attaching subsequently to the commencement of the building, and that, where there are several persons claiming liens under said statute, their order of priority among themselves is determined by the dates of the filing of their respective petitions. *Hall v. Hinckley*, 32 Wis., 362.

The plaintiffs, as well as all other persons coming within its provisions, were conclusively presumed to know the contents of the statute. Assuming, as we must for the purposes of this appeal, that the defendants could have proved all they offered to prove, then, such being the facts, the plaintiffs were conclusively presumed to know that the same constituted a valid subsisting incumbrance of several thousand dollars upon the mill by reason of the lien so given by the statute; and, knowing such facts and knowing of the Copp mortgage, they were asked by the company, "What incumbrance, if any, is now on said property?" and they answered, $5,000, whereas the Copp mortgage alone amounted to that. But it was stated on the argument that such a construction might avoid a large per cent. of existing policies; that any person, however responsible, was liable to forget unpaid bills for recent repairs upon their dwelling houses, and, without thinking of the statutory lien therefor, apply for an insurance, and honestly state in the application that there was no incumbrance thereon, and yet, technically speaking, the answer might be untrue. The suggestion is pertinent, and we have fully considered it. But this is not such a case; and besides, courts are not organized to make, nor regulate the making of, contracts between parties, nor to relieve parties from provisions in contracts on the ground that, in their opinion, in some conceivable case they

might operate harshly.   It is for  parties  to  make  their  own
contracts, under such regulations as  the  legislature  may pre-
scribe.    Courts must be content with  construing  and enforc-
ing contracts according to law.    We therefore hold that a sub-
sisting mechanic's lien, for which  a  petition  was  filed,  is  an
incumbrance within the ordinary meaning of the word.

*By the Court.*— The  judgment  of  the  circuit  court  is
reversed, and the cause remanded for a new trial.

ORTON, J., took no part.