Jones and another vs. Foster and another.

JONES and another, Respondents, vs. Foster and another, Appellants.

*November 6 — November 23, 1886.*

PARTIES: PLEADING: PRACTICE: CONTRACTS: DAMAGES. *(1, 2) Defect of parties plaintiff: Waiver: Demurrer in answer. (3) Excess of parties defendant: Demurrer. (4) Obligations assumed by third person. (5) Contract with firm: Withdrawal of one member. (6) Readiness to perform contract: Special verdict. (8) Sale of chattels to be paid for in labor: Damages: Interest. (7) Appeal to S. C.: Bill of exceptions: Opinion of trial judge: Inconsistency in special verdict. (9) Costs: Affidavit verifying disbursements: Attendance of witnesses.*

1. After the defendant has answered and there has been a trial upon the merits, it is too late, upon a new trial being granted, to raise for the first time, by a new answer, the objection that there is a defect of parties plaintiff.

2. A demurrer for defect of parties cannot be embodied in an answer upon the merits.

3. An excess of defendants is not a defect of parties defendant or a ground of demurrer. If as to one of the defendants the complaint does not state a cause of action he should demur separately on that ground.

4. Where by agreement with B., C. acquires all the rights and assumes all the obligations of B. arising under a contract previously made between A. and B., A. or his assigns may hold C. responsible for the breach of any of the obligations thus assumed.

Jones and another vs. Foster and another.

5. F. sold certain mill machinery to a firm under an agreement providing that he should furnish logs to be sawed by such firm and should receive payment for the machinery in such sawing. One of the members of the firm withdrew, transferring his interest in the contract to the other members. *Held*, that such withdrawal did not relieve F. from his obligation under the contract to furnish logs to be sawed.

6. In an action to recover damages for the breach of a contract, though the special verdict does not specifically find that the plaintiffs were ready and willing to perform on their part, yet it is sufficient to support a judgment for the plaintiffs if their readiness and willingness may fairly be inferred from the other findings, and the defendants did not ask for a more definite finding on that subject.

7. Where the bill of exceptions does not contain all the evidence, but does contain the opinion of the trial judge on a motion for judgment upon the special verdict, statements of fact in such opinion are available, on the appeal, to explain apparent inconsistencies in the verdict.

8. Plaintiffs purchased mill machinery for a certain price to be paid, with interest, by sawing into lumber at a certain rate logs which, under the contract, the defendants were bound to furnish in yearly instalments until all the timber on certain lands was cut. The time limited for cutting such timber was four years, and it might be completed in two years. In an action, brought more than four years after the contract was made, to recover damages for defendant's failure to furnish logs, it appeared that if the defendants had fulfilled the agreement as to furnishing logs the machinery would probably have been paid for by the sawing in two years. *Held*, that the plaintiffs should be allowed as damages the profits they would have made had the logs been furnished, deducting the price of the machinery and *two years interest* thereon.

9. The affidavit verifying the disbursements in a bill of costs stated as to the witnesses that they were duly subpœnaed, were necessarily in attendance on the trial the number of days, resided at the place, and traveled the number of miles from their residence to attend the trial, as therein stated and set opposite their names, with the amount to which each was entitled. *Held*, a substantial compliance with sec. 2928, R, S.

APPEAL from the Circuit Court for *Jackson* County.
Action to recover damages for the breach of a written

contract. The following statement of the case was pre-
pared by Mr. Justice CASSODAY:

November 12, 1876, the defendant *Foster* owned a lot of
timbered lands in Clark county, Wisconsin, and a saw-mill
in the town of Mentor, in that county. On the day named
a large portion of the mill and machinery was destroyed
by fire. January 15, 1877, the plaintiffs, *Charles Merrill*
and *Samuel II. Jones*, and one Cummings Merrill, were co-
partners engaged in manufacturing and sawing logs into
lumber and shingles at Merrillan, Jackson county, under
the firm name of Merrill, Jones & Merrill. By an agree-
ment in writing made January 15, 1877, said *Foster* agreed,
in effect, to sell and deliver to said Merrill, Jones & Merrill
all there was left of his saw-mill so destroyed by fire, to be
delivered on the ground where it then lay, to wit, one en-
gine, boiler, shafting, etc., for which he was to receive from
them $1,500, with interest at the rate of ten per cent. per
annum, payment to be made in sawing at the rate of $2.50
per thousand feet for all lengths less than twenty feet,
longer timber not exceeding thirty-two feet at $3 per thou-
sand feet, and also to make shingles at $1 per thousand feet.
It was therein further agreed, in effect, that *Foster* should
put his logs in a workmanlike manner upon the bank of the
stream on which Merrill, Jones & Merrill's mill was to be
built, somewhere between that mill and the water-mill next
above, known as the "Sam Jones mill;" that said Merrill,
Jones & Merrill were to take the logs, and, after sawing,
put the lumber on the cars on the track in or near the mill,
in as good shape as possible for unloading, and *Foster* was
then to handle it; that Merrill, Jones & Merrill were to
furnish and keep in repair a good track, with wood
rail, from the mill to the G. B. & M. Railway, and also in
other directions from mill, enough to make room along-side
of same to pile all lumber, and put three cars thereon, to be
used at all times by said *Foster* for the purpose of moving lum-

ber; that they were also at all times to make such varieties of dimensions and such quantity of shingles as *Foster* might order, and work up the logs economically, trimming the lumber to even lengths with square edges and even thickness, and in all respects to make lumber and shingles as accurately as can be made in a first-class mill; that *Foster* was "to furnish logs, in yearly instalments to conform to the requirements of his trade, until all his timber" was "cut, or as nearly as" should "be profitable to cut," from the lands described; that the time limited for cutting said timber was four years, and might be finished in two; that after said mill machinery should be so paid for as above *Foster* was "to pay for sawing, at the price above agreed upon, within ninety days from completion of each season, and to pay interest, after thirty days" from "the closing of the season, on all sums due for sawing, at the rate of ten per cent. till paid;" that "all logs put in any winter" were to "be sawed out during the season following;" that the shingles were to be assorted and packed in such manner and in such bundles as *Foster* might direct, and each bunch was to be marked with black paint in such manner as desired,— *Foster* furnishing stencil plates; that all of said machinery above conveyed, together with all the repairs, improvements, and additions put thereon and added thereto, were to be held by *Foster* as security for payment of purchase money or price as above stipulated, and in case of default in payment *Foster* was at liberty at any time, by virtue of said agreement, to take possession of said property; that *Foster* was to have one half of their piling-ground for piling his lumber.

January 3, 1879, *Foster* made an agreement with the defendant *Richardson*, wherein it was agreed, in effect, that *Richardson* should take possession of the timbered lands described, and the timber standing thereon or lying on skids, and other property, for which he was to pay the amounts therein named in pine lumber, to be cut from said

timber and well manufactured in the manner indicated in said contract with Merrill, Jones & Merrill; that *Richardson* therein agreed to assume all obligations to which *Foster* was held by virtue of said first-named contract, and was also to enforce the obligations therein assumed by Merrill, Jones & Merrill, and was thereby entitled to collect of them the amount due on said contract, which was thereby transferred to said *Richardson* as a part of the property thereby conveyed to him; that, upon the fulfilment of said conditions and payment of taxes, *Richardson* was to have deeds of the lands, but all the property was to be and remain the property of *Foster* as security for the fulfilment of such conditions, and upon any default *Foster* was authorized to take possession without process of law. Prior to the commencement of this action Cummings Merrill withdrew from said firm and, for value received, sold and assigned to the plaintiffs all his right, title, and interest in and to said agreement and the property therein described and the benefits arising thereunder.

About July 5, 1881, the plaintiffs commenced this action, alleging, in effect, the foregoing facts, among others, and that January 15, 1877, there was standing and growing on said lands logs and timber suitable and profitable to be manufactured into lumber and shingles,— in all not less than 3,000,000 feet of pine suitable for boards and timber of length under twenty feet, and also not less than 3,000,000 of shingle timber, suitable and profitable to be manufactured into shingles; that in pursuance of said agreement first mentioned, and for the purpose of fulfilling the same on their part, Merrill, Jones & Merrill erected, built, and maintained their saw-mill at the cost named, and took possession of said machinery purchased, and had performed, or had been ready and willing to perform, all the conditions of said agreement on their part, and still were, except in so far as they had been prevented therefrom by reason of *Foster*

or *Richardson*, or both of them, refusing and neglecting to furnish the logs and timber as agreed, and neglecting to perform any of the conditions of said agreement; that none of the conditions of the first-named contract had been performed by *Foster* or *Richardson*, except they had furnished about 275,000 feet of logs and timber to be sawed into lumber, and which was duly sawed and manufactured as agreed; that the time for furnishing the balance of logs and timber under the contract had expired before the commencement of the action; wherefore the plaintiffs demand judgment for $2,000 damages.

July 29, 1881, the defendants appeared by attorney, and put in a joint answer, in effect admitting the agreements, alleging nonperformance on the part of the plaintiffs, and a general denial as to the matters not so admitted. After a trial of the cause, and on January 25, 1882, the defendants joined in an amended answer, wherein, in addition to denials, it was alleged, in effect, that Cummings Merrill was a necessary party; that *Foster* and *Richardson* were improperly united as defendants; and that there was no cause of action alleged against *Richardson*. The answer also set up three several counterclaims, each alleging nonperformance on the part of the plaintiffs and claiming damages therefor, the nature of which sufficiently appears in the special verdict.

Upon the last trial the jury returned two special verdicts or sets of questions, in effect as follows:

(1) That neither the defendants, nor either of them, furnished to the plaintiffs, to be manufactured into lumber by them at their mill, logs from said lands in yearly instalments as required to supply the demands of *Foster's* trade for the years 1877, 1878, 1879, and 1880; (2) that the defendants, and each of them, violated the conditions of their contract by not furnishing logs to the plaintiffs to be manufactured in the year 1877 or 1878 or 1879 or 1880; (3) that

the defendants, and each of them, violated the conditions of the contract by selling a portion of the logs from said lands before any were delivered to the plaintiffs to be manufactured by them; (4) that the plaintiffs were justified in not sawing the logs actually put into the stream, as they were put in and to be sawed at plaintiffs' mill, during the years 1878, 1879, and 1880, except on the conditions by the plaintiffs imposed on the defendants; (5) that the plaintiffs did give the notice required of their option to manufacture shingles; (6, 7, 8) that, at the time of making the contract, there was 2,550,000 feet of lumber, and 50,000 feet of timber for shingles, standing and being upon said lands, profitable for *Foster* to manufacture into lumber and shingles as per the terms of the contract; (9) that if any logs were lost which were put into the streams by the defendants to be manufactured at plaintiffs' mill, such loss was not occasioned through or by the fault or neglect of the plaintiffs; (10) that the plaintiffs had sustained $2,543.75 damages by reason of the contract being violated on the part of the defendants.

(1) That the plaintiffs built a mill wherein they could manufacture logs into lumber in all respects as accurately as could be made in first-class mills; (2) that during the years 1879 and 1880 the plaintiffs did have a mill and pecuniary means whereby they could manufacture the defendants' logs into lumber in all respects as accurately as the logs could have been manufactured into lumber in a first-class mill, as they believed; (3) that the plaintiffs did not in the year 1879 or 1880 refuse to manufacture into lumber any of the logs cut from said lands unless the defendants would agree to pay to the plaintiffs in money a sum sufficient to pay the expense of manufacturing the lumber, or any other sum of money; (4) that the plaintiffs did require the defendants to agree to pay the running expenses before they would manufacture the lumber; (5) that the defend-

ants, or one of them, furnished and delivered to the plaintiffs, from the lands described, to be manufactured into lumber by them, in the year or season of 1879 and 1880, 275,000 feet of logs, board measure; (6) that the plaintiffs did not refuse to manufacture into lumber the logs furnished them by defendants in the winter of 1878 and 1879 unless the defendants would agree to pay to them money enough to pay the expenses of manufacturing the logs into lumber, (7) but the plaintiffs did require the defendants to agree to pay in money the running expenses of the same; (8) that, of the logs furnished and delivered to plaintiffs by defendants in the winter of 1878 and 1879, the plaintiffs did manufacture into lumber, and return to the plaintiffs [defendants], 275,000 feet, board measure; (9) that all the lumber so manufactured was not of even lengths with square edges and of even thickness, as that was impossible to any mill; (10) that the lumber so manufactured was not made in all respects as accurately as could have been made in first-class mills, (11) but the value, per thousand feet, at the plaintiffs' mill, was not any less by reason of any of the things mentioned; (12) that the defendants paid to the plaintiffs, on account of the lumber manufactured by them for the defendants, $343.75; (13) that the plaintiffs manufactured, and returned to the defendants in lumber, all the logs furnished them by the defendants in the winter of 1878 and 1879; (14, 15) that all of the logs so furnished were returned in lumber to the defendants; (16) that the value of the logs at the plaintiffs' mill, so furnished that year, was $3.50 per thousand; (17) that in the winter of 1879 and 1880 the defendants furnished and delivered to the plaintiffs from said land, to be manufactured into lumber, 167,000 feet of logs, board measure, though green, (19, 20, 21) and the plaintiffs did manufacture them all into lumber and return them to Mr. Greve for the defendants, (22) and the same was worth $3.50 per thousand feet, board measure; (18) that the plaint-

iffs did not refuse to manufacture into lumber the logs so furnished in the winter of 1879 and 1880 unless the defendants would agree to pay the plaintiffs in money one dollar per thousand feet, or some other sum, towards paying the expenses of manufacturing the same, and they did not require the defendants to agree to pay in money any sum towards paying the expenses; (23) that, if any logs so furnished plaintiffs by defendants went over the plaintiffs' dam, the plaintiffs were not responsible for them; (24) that the defendants did not cut all the timber and trees from the land described that would have been profitable for them to cut and haul to the plaintiffs' mill to have manufactured into lumber, (25) but left standing on said lands, January 15, 1881, 481,000 feet, board measure, which might have been profitably so cut and hauled; (26) that since January 15, 1877, the defendants cut from said lands 2,119,000 feet, board measure, (27) of which they only furnished to the plaintiffs to manufacture into lumber, 442,000 feet, board measure; (28) that the actual cost per thousand feet, board measure, in doing all that the plaintiffs agreed to do in the premises during the years 1879, 1880, and 1881, was $1.25 per thousand feet; (29) that Cummings Merrill withdrew from the firm, and sold to the plaintiffs, to the knowledge of the defendants, about January 1, 1878; (30) that, before delivering any logs to the plaintiffs to manufacture, the defendant sold 60,000 feet of logs, board measure, to C. N. Paine & Co., (31) without any permission from the plaintiffs to make such sale; (32) that the amount of damage sustained by the plaintiffs by reason of not having the lumber to manufacture as agreed was $2,543.75, and the amount of damages they sustained by reason of not having shingles to manufacture as agreed was nothing.

Both parties moved for judgment upon said special verdict, whereupon it was ordered by the court that the plaintiffs do have and recover judgment on said special verdict

against the defendants, for the sum of $640, with interest thereon from March 20, 1885, together with their costs and disbursements in this action. Judgment was thereupon entered accordingly, from which the defendants appeal.

*Lloyd Barber*, of counsel, for the appellants, contended, *inter alia:* 1. *Foster's* estimate of the solvency, pecuniary credit and standing, and skill as a mill-man of Cummings Merrill may have constituted an important inducement to the contract, without which *Foster* would never have entered into it. When, therefore, *Foster* knew that Cummings Merrill had withdrawn from the firm and had assigned all his interest in the contract, he was under no obligation to deliver his timber to the plaintiffs to be sawed. *Robson v. Drummond*, 2 Barn. & Ad. 306; *Humble v. Hunter*, 12 Q. B. 317; *Lansden v. McCarthy*, 45 Mo. 108; *Winchester v. Howard*, 97 Mass. 305; *Boston Ice Co. v. Potter*, 123 id. 30; *Randall v. Chubb*, 46 Mich. 311. 2. The complaint states no cause of action against *Richardson*. The contract between him and *Foster* was executory, was not made for the benefit of the plaintiffs, they are not parties to it, and it has not been assigned to them. *Boston Ice Co. v. Potter*, 123 Mass. 28; *Cleaves v. Stockwell*, 33 Me. 341; *L. O. S. R. Co. v. Curtiss*, 80 N. Y. 222; *National Bank v. Grand Lodge*, 98 U. S. 123; *Savings Bank v. Ward*, 100 id. 195; *Litchfield v. Garratt*, 10 Mich. 431; *Pipp v. Reynolds*, 20 id. 88. 3. There being no finding in the verdict as to whether the plaintiffs were ready and willing to perform the contract on their part, the plaintiffs were not entitled to judgment. *Ronze v. Dawson*, 9 Wis. 246; *Davis v. Farmington*, 42 id. 426; *Carroll v. Bohan*, 43 id. 218; *Cotzhausen v. Simon*, 47 id. 105; *Johnson v. Ashland Lumber Co.* id. 331; *Eviston v. Cramer*, 57 id. 571; *Bell v. Shafer*, 58 id. 228; *Cartright v. Belmont*, id. 375. The refusals of the plaintiffs to manufacture the logs into lumber unless the defendants would first agree to pay in money the cost of manufacture, show that they were

not ready and willing to perform, and the defendants had the right to consider the contract as abandoned and rescinded. *School District v. Hayne*, 46 Wis. 514; *Beekman v. Fletcher*, 48 Mich. 555; *Robson v. Bohn*, 22 Minn. 412; *S. C.* 27 id. 344; *P. & C. Construction Co. v. Seymour*, 91 U. S. 650; *Shaw v. Republic L. Ins. Co.* 69 N. Y. 292; *Frost v. Smith*, 7 Bosw. 113; *Hapgood v. Shaw*, 105 Mass. 276, 280; *Collins v. Delaporte*, 115 Mass. 161, 162; *Harris v. Bradley*, 9 Ind. 168; *Keenan v. Brown*, 21 Vt. 86; *Kimmerle v. Hass*, 53 Mich. 341; *Pope v. Porter*, 102 N. Y. 366. 4. The amount of the judgment entered is too large by $300. By the terms of the contract the defendants had four years in which to deliver the logs, and they should have been allowed interest for four years on the price of the machinery. 5. The affidavit as to disbursements was insufficient. It did not state that the disbursements were necessary, or that any of the witnesses were necessary or material. *Dean v. Williams*, 6 Hill, 376; *Wheeler v. Lozee*, 12 How. Pr. 450; *Haynes v. Mosher*, 15 id. 217; *Osborne v. Gray*, 32 Minn. 53.

For the respondents the cause was submitted on the brief of *C. F. Ainsworth.*

CASSODAY, J. The testimony given upon the trial is not all preserved in the record. In fact, it is conceded that only a very small portion of it is so preserved; and that only so far as it covered certain points involved in the motion to set aside the verdict and for a new trial. The questions here presented arise upon the pleadings and the facts as found by the special verdict.

1. It is said there is a defect of parties plaintiff, in the omission of Cummings Merrill, who was a partner of the plaintiffs in making the contract upon which the action is brought, and continued to be such for nearly a year after, when he withdrew from the firm and assigned and transferred all his interest therein, including the contract, to the

plaintiffs, to the knowledge of the defendants. The alleged defect appeared upon the face of the complaint, and hence might have been raised by demurrer, as provided in sec. 2649, R. S. It is only when any of the matters enumerated in that section do not appear upon the face of the complaint that the objection may be taken by answer, except that an objection based upon the statute of limitation may in any case be taken by answer. Sec. 2653, R. S. If none of the objections enumerated in sec. 2649, R. S., be taken either by demurrer or answer, the defendant is deemed to have waived the same, excepting only the objection to the jurisdiction of the court, and to the sufficiency of the facts stated to constitute a cause of action. Sec. 2654, R. S. The manifest theory of the statutes is that all the other objections enumerated in sec. 2649, being technical in their nature, and not going to the substances of the matter, should be raised at the earliest opportunity; and where, as here, they appear upon the face of the complaint, to be disposed of by the court as a matter of law before the trial on the merits is reached. *Redmon v. Phœnix Fire Ins. Co.* 51 Wis. 298; *Nevil v. Clifford,* 55 Wis. 166, 167; *Dreutzer v. Lawrence,* 58 Wis. 597, 598; *Hallam v. Stiles,* 61 Wis. 272; *Wood v. Union G. C. B. Ass'n,* 63 Wis. 14; *McLimans v. Lancaster,* 63 Wis. 600.

Here the defendants, in July, 1881, without raising any such objection, answered upon the merits. It is admitted that a trial upon the issue so formed was had in the fall of 1881, which resulted in a verdict and judgment in favor of the plaintiffs, which were set aside and a new trial granted, November 21, 1881. By such answer and trial the defendants waived all objection to the complaint on the ground of defective parties plaintiff, under the authorities cited. Some two months afterwards the defendants put in a new answer, embodying a demurrer for defects of parties plaintiff, as above indicated. To make this available upon the

last trial, the defendants objected to any evidence being given under the complaint. The statutes do not contemplate a demurrer of this nature as being embodied in an answer upon the merits. "The defendant may demur to one or more of the *several* causes of action stated in the complaint, and answer the *residue*." Sec. 2650, R. S. This clearly implies that he is not to do both to the same cause of action. The two things are inconsistent. A demurrer admits the existence of every fact that is well pleaded. An answer upon the merits takes issue with the same facts. Even an objection by way of answer on the ground of a defect of parties plaintiff, is by way of abatement and not in bar. Such a plea in abatement is waived by pleading the same matter in bar. *Hooker v. Greene*, 50 Wis. 271.

With certain exceptions not material here, "every action must be prosecuted in the name of the real party in interest." Sec. 2605, R. S. Cummings Merrill had no interest whatever in the cause of action alleged in the complaint. That the interest which he previously had was assignable, under our statutes, cannot be questioned. *Foster* did not contract for Cummings Merrill's personal skill, service, or supervision, and hence the authorities cited by the learned counsel for the defendants are inapplicable. Besides, there is no question of rescission of the contract by reason of his withdrawal from the firm. On the contrary, the defendants, with knowledge of such withdrawal, went on and furnished a portion of the logs under the contract. Of course, Cummings Merrill was not, by such withdrawal, released from any liability to the defendants by reason of any breach of the contract as to any matter set up in any of the counterclaims. The defendants had their remedy by independent action against him and the plaintiffs jointly for the several breaches of contract alleged in the counterclaims; and in the same action could have proceeded *in rem* against the property sold by *Foster* to the firm, as was sought to be

done here. Had they done so, and in form obtained a judgment against all the original members of the firm personally, it might have been enforced, as prescribed by statute, notwithstanding Cummings Merrill was without the jurisdiction of the court. Secs. 2795, 2884, R. S.; *Dill v. White*, 52 Wis. 456. But the mere fact that Cummings Merrill would have been a proper defendant in such independent action did not make him a necessary party plaintiff as to the cause of action alleged in the complaint. Obviously, the objection was properly overruled.

2. It is said that the complaint states no cause of action against the defendant *Richardson;* and that is alleged as a defect of parties defendant by way of demurrer embodied in the last answer. An excess of defendants is not a defect of parties defendant. If the complaint stated no cause of action against *Richardson,* he should have separately demurred on that ground. But the complaint clearly did state a good cause of action against him. By his contract with *Foster* he agreed to assume all obligations to which *Foster* was held by virtue of the contract with the firm, and was to enforce the obligation therein assumed by the firm, and was entitled to collect of them the amount due on that contract, which claim was thereby transferred to him. By that agreement he became a party to the contract with the firm, and could hold the firm responsible for any breach of that contract. It is equally certain that the firm, and the plaintiffs as the assignees of Cummings Merrill, could hold him responsible for any breach of any of the obligations he thus assumed. *Putney v. Farnham*, 27 Wis. 187; *McDowell v. Laev*, 35 Wis. 171; *Palmeter v. Carey*, 63 Wis. 426; *Johannes v. Phœnix Ins. Co.* 66 Wis. 57, and cases there cited.

3. It is said, in effect, that the special verdict is insufficient to support the judgment, because it is not specifically found that the plaintiffs had, during the time in question,

been ready and willing to perform all the conditions of the agreement on the part of said firm to be performed. We think the verdict does, in effect, so find. The furnishing of the logs at the place named was a condition precedent to their being manufactured into lumber by the plaintiffs. When the jury found, in effect, that the defendants, without any valid excuse, refused to furnish to the plaintiffs, as agreed, the greater portion of the logs, and otherwise disposed of them, and that the plaintiffs did build a mill and have the pecuniary means whereby they could manufacture into lumber the defendant's logs, and did manufacture all that were so furnished, the breach of the contract upon the part of the defendants, and the readiness and willingness to perform on the part of the plaintiffs, may be fairly inferred. If the defendants wanted a more definite finding in that regard, they should have requested it; and its omission, without such request, was not error. *Wilkinson v. Wilkinson*, 59 Wis. 560.

It is true that the findings, disconnected from the evidence given upon the trial, may seem to be somewhat inconsistent, and leave it in doubt whether the plaintiffs did not impose conditions upon their sawing the logs not authorized by the contract. But the bill of exceptions contains the opinion of the trial judge on the motion for judgment, in which the matter is made clear. He said: "The defendants claim the contract is not binding on them for want of mutuality; that, whereas *Foster* agreed to deliver for sawing all the timber on the land which was profitable to cut, the plaintiffs did not agree to saw it all. By the contract, *Foster* 'agrees to furnish logs, in yearly instalments to conform to the requirements of his trade, until all his timber is cut, or as nearly as it shall be profitable to cut.' 'The time limited for the cutting of said timber is four years.' 'It is distinctly understood that all logs put in any winter shall be sawed out the season following.' No

want of mutuality is discovered. *Foster* agrees to put all the logs in. The plaintiffs are to saw all the logs that *Foster* puts in any winter the season following. *Foster* was to put the logs in, in yearly instalments to conform to the requirements of his trade. But his time to put them in was limited to four years in any event, whether required by his trade or not. Plaintiffs' *conditional refusal* to saw the *first instalment* of logs was not, as a matter of law, a breach of the contract. It was not, in the circumstances, necessarily a refusal to perform the contract on their part. *By the contract they had the whole season to saw them in.* There was some dispute about the terms of the refusal; but the jury have, in substance, found that it was not a *refusal* to perform the contract. The defendants have not performed the contract on their part. Their failure to perform necessarily excuses the plaintiffs from performing. The plaintiffs were ready to perform. The plaintiffs could perform only at their mill, and after the logs were delivered to the plaintiffs to be sawed. So the performance of the contract by the defendants was a condition precedent to its performance by the plaintiffs."

Since the evidence is not all before us, this statement of the facts by the trial judge must be regarded as a verity in the case. *Buechel v. Buechel,* 65 Wis. 536; *Hoey v. Pierron, ante,* p. 262.

4. It is said that the damages allowed in the judgment are, in any event, $300 too large. This claim is based solely upon the theory that the defendants were entitled to ten per cent. interest for *four* years on the $1,500 to be paid for the machinery. The court held that, as the machinery was to be paid for in sawing logs which the defendants failed to furnish, the price of it was not available to the defendants as a counterclaim, but was an element to be considered in estimating the plaintiffs' damages. The learned judge said: " For, if the contract had been performed on both sides, the

price of the machinery and interest would have been deducted out of the plaintiffs' profits. The plaintiffs' profits on the whole contract would really be the difference between the actual profits on the sawing at the contract rate, and the contract price of the machinery. The same sum or difference will represent this damage for the breach of the contract by the defendants. The plaintiffs agreed to pay $1,500 for the machinery. They agreed also to pay interest at the rate of ten per cent. It must have been contemplated that this interest should be paid until the principal sum should be paid under the contract. It was defendants' fault that it was not paid under the contract. There should be allowed to them the same amount of interest as they would have been entitled to receive if the contract had been fulfilled on both sides. There is an element of uncertainty on this point. But it seems probable that if the defendants had fulfilled on their part, the whole principal sum and interest would have been paid within the *first two seasons* at least. It involved the sawing of less than one half of all the logs which were actually cut from the land, which by the contract were all to be sawed, at the longest, within four seasons. Add to the contract price of the machinery *two years' interest* at ten per cent., deduct the payment of $343.75, and there remains unpaid on the machinery $1,456.25. Deduct this sum from the sum of the plaintiffs' unpaid profits for sawing, $2,096.25, and the difference is $640. This represents the sum of the plaintiffs' profits upon the whole contract as nearly as it seems possible to estimate them from the *data* furnished by the special verdict and the facts admitted by the pleadings." This seems to properly dispose of that objection.

5. Exception is taken to the order of the trial judge on appeal from the clerk from the taxation of costs. The disbursements allowed on such appeal seem to have been stated in detail and verified by affidavit filed with the clerk, as re-

quired by sec. 2927, R. S.; ch. 91, Laws of 1880.   The statute further provides, in effect, that, " when there shall be charges in a bill of costs for the attendance of any witnesses, . . . or for any other disbursements *except to officers for services rendered,* such charges for witnesses shall not be taxed without an affidavit stating the distance they respectively traveled and the days they actually attended; . . . nor shall such disbursements be allowed without an affidavit specifying the items thereof particularly; nor unless they appear to have been necessary and reasonable in amount."   Sec. 2928, R. S.   This section is substantially the same as 2 R. S. N. Y. p. 653, sec. 7, ch. 10, pt. 3, tit. 5.   The affidavit as to the witnesses stated, in effect, that they were duly subpœnaed as witnesses on the part of the plaintiff in the action, and were necessarily in attendance on the trial the number of days, resided at the place, traveled the number of miles from their residence to attend the trial, as therein stated and set opposite their names, with the amount to which each was entitled.   This affidavit seems to have been a substantial compliance with the statute, as to witnesses; especially as such attendance and travel must have appeared to the trial judge to have been necessary and reasonable in amount, for he allowed the same.   It has been held in New York, in the cases cited by counsel, that where the witnesses were not sworn on the trial, or there was some probability of their not being necessary, the affidavit should state that the witnesses were material and necessary, or that the party so believed.   But in this case we think the affidavit was sufficient.   So far as the disbursements " to officers for services rendered" were concerned, they are expressly excepted from the provisions of the statutes cited.

*By the Court.*— The judgment of the circuit court is affirmed.