ALABAMA & VICKSBURG RAILWAY COMPANY *v.*
SOLOMON FRIED.

1. EVIDENCE. *Memorandum. Aid to memory.*

A memorandum used by a witness to refresh his memory as to the quality and quantity of cotton in each of a large number of bales, for the destruction of which suit is brought, may be properly submitted to the jury, not as independent evidence, but to aid the jurors in remembering the testimony.

2. FIRES. *Railroads. Storing cotton near. Contributory negligence.*

The lessee of land adjoining a railroad who temporarily stores cotton bales thereon, using tarpaulin to cover them, and keeping a watchman at all times near the same, with barrels of water and other facilities for extinguishing sparks, is not as matter of law, notwithstanding the inflammability of cotton, guilty of such contributory negligence as will preclude a recovery by him of the railroad company for the burning of his cotton, caused by fire negligently permitted to escape from its locomotives.

3. SAME. *Evidence of sparks from other engines. Harmless error.*

In the trial of a case against a railroad company for the destruction of property by fire, caused by the company's negligence in allowing fire to escape from a locomotive, the erroneous admission of testimony showing the escape of sparks from other locomotives will not be cause for reversal of a judgment in plaintiff's favor where it is improbable that the result would have been different had such testimony been excluded.

4. SAME. *Separate tortfeasors.*

> The principle that, where damage is caused by two or more efficient causes, a plaintiff suing only one of several wrongdoers must show the particular part of the damage caused by the defendant, cannot be invoked in the supreme court in defense of a suit for the destruction of baled cotton by fire because a witness testified that the fire department of the city reached the scene when only a few bales of the cotton were burning and, in efforts to extinguish it, scattered fire so as to ignite many other bales, the record showing no invocation of the principle in the court below and nothing else on the subject.

FROM the circuit court of Warren county.

HON. GEORGE ANDERSON, Judge.

Fried, appellee, was plaintiff, and the railway company, appellant, defendant in the court below. From a judgment in plaintiff's favor defendant appealed to the supreme court. The facts are stated in the opinion of the court.

*Mc Willie & Thompson,* for appellant.

The books of the Press Association were not books of account for goods sold and delivered, nor for services rendered, and are, therefore, not within the exception to the common law rule as announced by this court in *Moody* v. *Roberts*, 41 Miss., 74, 76, and *Bookout* v. *Shannon*, 59 Miss., 383. They are, however, the books of a third person, and the entries therein are *res inter alios acta*, not made for the purpose of charging the defendant railway company, nor in reference to any transaction with which that defendant was connected or in any way concerned.

We refer the court to the learned note accompanying the case of *State Bank* v. *Brown*, 53 L. R. A., 513, where the rule recognized by the above cited Mississippi decisions is shown to be supported by a great number of authorities.

We find no respectable authority for the admission in evidence of the books of a third person who is disconnected with the transaction save where an entry against interest appears on the books of a deceased person, and this exception rests upon

a wholly different principle from that upon which the general rule is based. The books of a merchant are admitted because the debtor is presumed to be able to contradict the entries which are made against him for goods sold and delivered, and the same reason justifies the admission of the books in which charges are entered for services rendered. In both cases, the debtor, by dealing with the other party on credit, in a measure, vouches for the truthfulness of the charges made against him, and is in a position to know whether they are correct. At all events when the charges are entered in the course of a transaction between them, they become a part of the *res gestæ*, and are, therefore, admissible.

The entries made in the books offered in this case were not made for the purpose of charging the defendant railway company, which was wholly disconnected with the transaction between the plaintiffs and the Cotton Compress Association out of which the entries arose, and in no position to controvert the list made up by the plaintiff and the insurance company from the compress books, and entirely satisfactory to both of them, doubtless as a measure of the liability to be saddled upon the railway company. It appears from the testimony of Hornthall, one of the plaintiff's witnesses, that the books offered were not books of original entry, and that the entries therein were made after the fire. Of course, if the books were not admissible, memoranda made from them ought not to have been received in evidence.

The plaintiff had no direct evidence that the fire originated from sparks emitted by defendant's locomotives, and in order to take advantage of the statutory presumption of negligence as to injuries resulting from the running of trains had to prove that fact by circumstances. He, therefore, introduced much evidence in regard to the emission of sparks by defendant's engines in general, but none that we recall relating to the day of the fire except that of one witness whose testimony had reference only to the emission of sparks from the engine drawing

the eastbound passenger train ten or fifteen minutes before the fire, while the engine was coming up the steep grade of the incline about half a mile distant from the scene of the fire. The plaintiff's evidence shows throughout that as the grade increased the exhaust of steam and attendant emission of sparks became greater, and while there is some grade along Pearl street, where the fire occurred, the development of power necessary to overcome it, would not involve anything like the emission of sparks that takes place at the incline which has more than twice as steep a grade. The defendant therefore moved to exclude the testimony of the witness who had testified to the emission of sparks by engines at the incline, and the court, having erroneously overruled the motion, afterwards emphasized its view of the law by granting the plaintiffs an instruction which removed from the consideration of the jury the different conditions existing at the very different points represented by the incline and Pearl street near its intersection with Speed street.

The instruction allowed the jury full rein to give the utmost effect to the evidence of the emission of sparks by engines engaged in very different works at a different place where a great many more sparks would necessarily be emitted. If the jury had been allowed to consider the emission of sparks at the incline in reference to a fire at Bolton or Clinton, the impropriety of the ruling would hardly be more obvious.

Evidence of the emission of sparks by other engines on other occasions must be confined to times and points not remote from the fire in question, and even then it is not admissible until plaintiffs have given evidence tending to show that the fire could have had no other origin. *Penn. Ry. Co.* v. *Rossman,* 3 Ohio C. C., 111 (7 Ohio Dec., 119).

When one of two identified engines must have caused the fire, if in fact it originated from the emission of sparks by an engine, evidence of the emission of sparks by other engines at

other times is inadmissible. *Inman* v. *Elberton Air Line Ry. Co.*, 90 Ga., 663.

In view of that feature of our statute law creating a presumption of negligence on the part of railroad companies in all cases where injuries result from the running of their trains, the stricter rule as to the admission of evidence should be followed for it would certainly be hard to rest this presumption upon evidence which in no way tends to prove the fact upon which the presumption arises. We cite upon the subject the following:

California.—*Flynn* v. *Railroad Co.*, 40 Cal., 14; *Henry* v. *Southern Pac. Ry. Co.*, 59 Cal., 156; 13 Am. Ry. Rep., 168.

Florida.—*Jacksonville, etc., Ry. Co.* v. *Peninsular Land, etc., Co.*, 27 Fla., 1; 49 Am. & Eng. Ry. Cases, 603.

Georgia.—*Inman* v. *Elberton Air Line Ry. Co.*, 90 Ga., 663; 35 Am. St. Rep., 232; 16 S. E. 958.

Illinois.—*Hoopeston First Nat. Bank* v. *Lake Erie Co.*, 174 Ill., 36; 50 N. E. 1023.

Indian Territory.—*Missouri, K. & T. Ry. Co.* v. *Wilder*, 53 S. W., 490.

Michigan.—*Ireland* v. *Cincinnati, etc., Ry. Co.*, 79 Mich., 163; 44 N. W., 426.

Minnesota.—*Nelson* v. *Chicago, etc., Ry. Co.*, 35 Minn, 170; 28 N. W., 215.

New Hampshire.—*Hazeltine* v. *Concord Ry. Co.*, 64 N. H., 545; 15 Atl., 143; 35 Am. & Eng. Ry. Cases, 236.

New York.—*Rood* v. *R. R. Co.*, 18 Barb. (N. Y.), 80; *Sheldon* v. *R. R. Co.*, 14 N. Y., 218.

Pennsylvania.—*Frankford & B. Turnpike Co.* v. *Philadelphia, etc., Ry. Co.*, 54 Pa. St., 345; *R. R. Co.* v. *Yeaser*, 8 Pa. St., 366; *Glaser* v. *Lewis*, 17 Phila. (Pa.), 345; 42 Leg. Int. (Pa.), 141; *Erie Ry. Co.* v. *Decker*, 78 Pa. St., 293; *Penn. Ry. Co.* v. *Shannahan*, 79 Pa. St., 405; *Henderson* v. *Philadelphia, etc., Ry. Co.*, 144 Pa. St., 461; 22 Atl., 851. 27 Am. St. Rep., 652.

Wisconsin.— *Gibbons* v. *Wisconsin Valley Ry. Co.*, 58 Wis., 335; 17 N. W., 132; 13 Am. & Eng. Ry. Cases, 469.

England.— *Vaughn* v. *R. R. Co.*, 5 Hurl. & N., 679; *R. R. Co.* v. *Brand.*, L. R., 4 H. L., 171, 201-2; *Higgs* v. *Maynard*, 12 Jur. (N. S.), 705; *Welfare* v. *R. R. Co.*, L. R., 42 B., 693; *Wright* v. *R. R. Co.*, L. R. 89 Exch., 137; 42 Law. Exch., 89.

In an action to recover damages for a loss sustained by fire set by a passing locomotive which is identified, evidence of other fires caused by different locomotives before and after the fire complained of is not admissible. *Hoopeston First Nat. Bank* v. *Lake Erie & W. Ry. Co.*, 174 Ill., 36; 50 N. E., 1023; Affg., 65 App., 21.

In an action against a railroad for damages caused by an engine emitting sparks, the engine being identified, evidence of other engines of defendant emitting sparks on other occasions is incompetent; defendant's liability depending on its negligence in operating the particular engine, and not in operating engines generally. *Missouri, K. & T. Ry. Co.* v. *Wilder* (Ind. Ter.), 53 S. W., 490.

If the particular engine which is supposed to have caused the fire is shown, no evidence respecting the condition of any other should be received. *Glaser* v. *Lewis*, 17 Phila. (Pa.), 345.

Where the statute does not impose absolute liability upon a railway company for fires set by its locomotive, but, as in this state, merely changes the burden of proof, the defense of contributory negligence is not defeated (3 Elliott on Railroads, sec. 1235, pp. 1922, 1923), and the acts constituting such negligence divide themselves into two classes; first, those things done or omitted to be done before the fire; and second, those after the fire. *Ib.*, p. 1923. When a person places a building or other property in a position exposing it to hazards, from railway fires, he is bound to take notice of the increased risk and exercise a higher degree of care than if the property were placed in an unexposed position. 3 Elliott on Railroads, sec. 1238, p. 1925, *et seq.; Kansas City, etc., Ry. Co.* v. *Owne*, 25

Kan., 419; *Chicago, etc., Ry. Co.* v. *Pennell*, 94 Ill., 448; *Briant* v. *Detroit, etc., Ry. Co.*, 104 Mich., 307; *Post* v. *Buffalo, etc., Ry. Co.*, 108 Pa. St., 585; 13 Am. & Eng. Ency. Law (2d ed.), p. 495.

It was shown by the plaintiff's own evidence, that a part, and doubtless a very large part, of the damages in this case were caused by the misdirected, if not reckless, course of the fire department, for in the language of one of plaintiff's witnesses, when they came they "knocked the fire everywhere and it began then to burn everywhere." In cases where damages result from several different causes, the burden of distinguishing by proof the amount due to the cause, for which defendant is responsible from that due to other causes is on the plaintiff. The plaintiff did not in the slightest degree attempt to meet this burden, nor is there any evidence to show the amount. *City of Elgin* v. *Welch*, 16 Ill. App. (16 Broadw.), 483; *Lemly* v. *Golden Censor Co., Ib.*, 457; *Priest* v. *Nichols*, 116 Mass., 401.

Negligence which has no operation in causing the injury, but which merely adds to the damage resulting, is no bar to an action, though it will detract from the damages, and the jury must, in the assessment of damages properly distinguish between the amount of damages arising from each cause and give a verdict for the damage from the defendant's negligence only. *Gould* v. *McKenna*, 86 Pa. St., 297. The jury cannot thus distinguish the damage for which the defendant is responsible when no evidence is introduced on the subject, and cannot therefore award any recovery. Certainly they cannot award one for the whole loss, as was done in this case.

*Harris Dickson* and *Catchings & Catchings*, for appellee.

It was claimed by the plaintiff that he had fifty-one bales of cotton destroyed by this fire, which he further claimed was caused by the negligence of the defendant company, and he accordingly brought suit for their value. It therefore became

necessary at the first step in proving his case, to show not only that these fifty-one bales were a part of the 85,000 bales handled that year by the Vicksburg Cotton Press Association, but that they at that time constituted a portion of the 1,200 bales on the hospital lot, and furthermore were a part of the 750 bales destroyed by fire.

Of course he had no personal knowledge of the exact location of his cotton; he merely knew by his receipts that it was in possession of the compress company, and under their exclusive control, and he must of necessity rely upon their employes to show just where it was.

From the nature of the case no human being could retain in his memory, not only the location of 1,200 bales out of 85,000 bales of cotton, but the more exact location of fifty-one bales out of 1,200 bales, and purely oral proof was therefore utterly out of the question. The location of all cotton in its custody was indicated by entries on the books of the compress, however, and the persons who made the entries in those books were present to testify under oath that they had made them correctly, and in the ordinary course of business.

A witness who testified that he personally received every bale of cotton that was stored on the hospital lot, placed tags on them, and entered the tag numbers in a book which he produced in court, and which book he swore was correctly and accurately kept. He was then shown the compress receipts for plaintiff's fifty-one bales of cotton, containing their tag numbers, which receipts he identified as issued and signed by himself, and compared with the entries in his book. He then testified that he had received each and every one of the fifty-one bales and stored them on the hospital lot. It was thus established beyond peradventure that the cotton was stored on the hospital lot. The witness further testified that none of the cotton which was placed on the hospital lot was ever moved until after the fire. It was thus demonstrated that plaintiff's cotton was on the hospital lot at the time of the fire.

Another witness testified that his duties required him to keep a complete record of all the cotton shipped out of and received in the compress; that he did keep such a record in a book which he produced in court; that the book contained a complete record of all cotton shipped out of the press; that shipments were never made except upon the order of the owner, and that all such orders had to come to him before the cotton could be shipped. He was then shown the compress receipts covering the fifty-one bales in question, which he had previously identified as being the receipts for the fifty-one bales, and testified from his book that no order had ever been received for the shipment of any of it, and none of it had in fact been shipped.

A third witness testified that none of this cotton had been sold, that no order for its shipment had been given, and that plaintiff had never received any money for it. It was thus proved that none of the cotton in question had ever been shipped or released from the custody of the compress.

And still another witness testified that in June, 1901, he himself had taken an inventory of all the cotton in the custody of the compress, entering in a book which he produced in court, and which he testified was correctly kept—the tag number of each bale on hand. He then testified, from his books, that none of the fifty-one bales of plaintiff's cotton were on hand at the date of his inventory. It was thus shown that none of the cotton in question remained in the compress.

Having shown that the cotton in question was stored on the hospital lot, and remained there until after the occurrence of a fire which destroyed the greater part of the cotton on that lot; that it was never shipped or taken out of the compress, and that it was not in the possession of the compress a short time after the fire, an overwhelming presumption was of course raised that it was burned.

The overwhelming mass of testimony was absolutely and entirely uncontradicted, counsel for defendant satisfying himself with the technical objection that the books used were books

of a third person and therefore inadmissible, the action of the court in overruling this objection being here assigned for error.

It will be seen at once that no claim was made that the books were not books of original entry, or that they were not properly supported by the supplementary oath of the person producing them. The objection rests simply on the broad ground that they are books of a third person. As against this contention we contend:

(*a*) That for the purposes of this suit the books cannot be considered the books of a third person.

(*b*) That the books of third persons kept in the ordinary course of business, and properly supported by the oath of the person keeping them, are admissible in evidence as original independent evidence, to precisely the same extent as the books kept by a party to the suit.

(*c*) That where there is no person in existence who can testify from his personal knowledge as to the facts contained in book entries of third persons, these entries properly supported by the oath of the person making them, are admissible as the best evidence of the facts therein contained.

(*d*) That at all events the books produced by the witnesses Speed and Green are admissible as private memoranda made by the witnesses as to facts within their own knowledge.

(*e*) Whenever the courts or law writers have dealt with the question of the admissibility of the books of third persons, they have had in view the books of strangers to the proceeding, persons having no relation to or connection with either party to the suit. Measured by this test the compress books were not the books of a third person. The compress company was the bailee or agent of the plaintiff, and as such could have maintained an action in its own name against the A. & V. Railway Company for the destruction of the bailor's cotton. *Baggett* v. *McCormack*, 73 Miss., 552.

The authorities, so far as we know, are unanimous to the effect that in actions against insurance companies, warehouse

books or inventories kept or made by the party's own clerks are competent evidence of the quantity and value of the property destroyed. *Insurance Co.* v. *Weides*, 14 Wallace, 375; *Insurance Co.* v. *Weides*, 9 Wallace, 677; *Continental Ins. Co.* v. *Insurance Co.*, 51 Fed., 889; *Phœnix Insurance Co.* v. *Public Parks Co.*, 63 Ark., 204; *German Insurance Co.* v. *Amsbaugh*, 8 Kan. App., 197; *Levine et al.* v. *Lancashire Insurance Co.; Read* v. *State Insurance Co.*, 103 Iowa, 317.

·The most comprehensive and intelligent rule governing the admissibility of books of account which we have seen, is found in *Chicago R. R. Co.* v. *Provine*, 61 Miss., 292. In that case the plaintiff instituted suit against the defendant railroad company to recover the value of certain bales of cotton which he claimed had been shipped over the defendant's line and not delivered at their destination. To prove his case, he introduced in evidence his cotton blotters, and a cotton shipping book containing entries of cotton bought by the plaintiff from his various customers, with the weight and price of each bale, and the date of purchase. These were to be used in connection with other evidence in establishing the fact that the cotton in question was never delivered to the consignee.

It will be observed that the cotton books offered in evidence were in no sense books of account between the plaintiff and defendant, and recorded no mutual dealings between the parties. The court, however, held that had they been properly authenticated they would have been competent evidence, saying:

"The rule is that to authorize the introduction of books of account as evidence of the facts therein entered, it must be shown that they have been fairly and honestly kept, that the entries were made in the usual course of business at or about the time. the facts entered transpired; that the entries are original and made by a party having knowledge of the facts entered, or that information thereof was communicated to the party by whom the entries were made by some person engaged in the business whose duty it was to transact the particular

business and make a report thereof for entry on the books, and such report and entry must be made at the time of the occurrence, or before the facts can be supposed to have passed from his recollection.''

It will be observed that even in so elaborate and well-considered a definition as this, the court expressly refrains from imposing a limitation that the books offered must be the books of a party to a suit, saying instead, ''that they are the books of a party engaged in the business to which they refer.''

It will be seen at once that these books were not offered for the purpose of charging the defendant in any manner whatsoever, nor for the purpose of proving the principal allegation of the complaint, but merely for the purpose of establishing a purely collateral fact known only to the compress company, and coming to their knowledge through the ordinary every day conduct of the business in which they were engaged.

The principles governing the admissibility of the books of a third person are laid down. 9 Am. &. Eng. Ency. Law (2d ed.), 938; 1 Greenleaf on Evidence, 115, 116, 117, 120; *Chaffe* v. *United States*, 18 Wallace, 516; *Robson* v. *Mississippi River Logging Company*, 61 Fed., 905; *Owens* v. *State*, 67 Md., 307.

Even if the books produced by the witnesses Speed and Green, are not admissible under the shop book rule, so called, they are surely admissible as memoranda made by the witnesses and testified by them to have been correctly made.

The rule is not only that such memoranda are admissible for the purpose of refreshing the memory of the witness so that he can afterwards testify independently thereof, but that such memoranda are themselves admissible for the consideration of the jury when the witness testified that the entries were made by him at about the time of the occurrence of the acts recorded, and correctly made. *Lapham* v. *Kelly*, 35 Vt., 95; *Vross* v. *Bartholemew*, 42 Vt., 206; *Lewis* v. *Ingersoll*, 1 Keys, 57; *Spinn* v. *Baltzell*, 1 Fla., 321; *Halzey* v. *Sense-*

*baugh*, 15 N. Y., 488; *Moots* v. *State*, 21 Ohio St., 633; *Newell* v. *Holton*, 22 Minn., 19; 8 Ency. Pl. & Pr., 146 and cases cited.

The plaintiff was unable to identify the particular engine which had done the damage, it being impossible, as shown by the record, to see a spark in the daylight and tell from which of several engines it came. This condition of affairs made it necessary and competent to prove circumstantially what could not be proven directly, namely, the condition and handling of defendant's locomotive which passed by the lot. Plaintiff did this by showing other fires and the throwing of sparks by defendant's engines plying along Pearl street; bringing the evidence as close as possible to the time and place of this fire.

All of this evidence was competent and relevant for the two-fold purpose of showing circumstantially that the fire was caused by some engine of the defendant, and that such engine was either out of repair or negligently handled or both. *Gowan* v. *Glaser*, 10 Atl. (Pa.), 417; *Davidson* v. *St. Paul R. R.*, 34 Minn., 51; *Sheldon* v. *Hudson River R. R.*, 14 N. Y., 218 and cases; *Home Ins. Co.* v. *Penn. Ry.*, 11 Hun. (N. Y.), 182; *T. & P. Co.* v. *Land*, 3 Texas Appeals, 74; *Gulf, etc., Ry. Co.* v. *Holt*, 11 Am. & Eng. Ry. Cases, 72; see, also, 56 Am. & Eng. cases, 91; *Pittsburgh Ry. Co.* v. *Noel*, 77 Ind., 110.

This court, and indeed the courts of nearly all of the states, have expressly held that persons may use property adjoining the tracks of a railroad in such manner as may be most advantageous to them, and that they are not bound to anticipate negligence on the part of the railroad company in the operation of its trains. *Miss. Home Ins. Co.* v. *Railroad Co.*, 70 Miss., 119.

Argued orally by *T. A. McWillie*, for appellant, and by *O. W. Catchings*, for appellee.

TERRAL, J., delivered the opinion of the court.

Solomon Fried, doing business under the name of the Sol

Fried Company, sued appellant for the burning, through the alleged negligence of its servants, of a large quantity of lint cotton in bales belonging to him and alleged to be worth $2,509.71, and recovered a verdict, under the instructions of the court, which was premptory as to the amount, in the sum of $2,509.

Appellant assigns several grounds of exception to the proceedings had in the case. It especially complains that a memorandum of the fifty-one bales of cotton alleged to have been burned was put in evidence before the jury. The memorandum in question was composed of a copy of the books of the Vicksburg Cotton Press Association, as bailee of said cotton, showing the tag numbers of the fifty-one bales of cotton of appellee received by it on his account, which books of the press association were proven to be correct by the persons who made the entries on the books, and to have been correctly copied into the memorandum laid before the jury. The memorandum, so far as it was taken from the books of the press association, individualized each of the fifty-one bales of cotton which the books showed had not been shipped out and must, therefore, have been burned. The memorandum was also composed of a copy of the books of Fried, which were proven at the mouths of sworn witnesses to be correct, and which showed the weight and grade of cotton of each of the fifty-one bales bailed to the press association, and individualized by its books; and the value of each of said fifty-one bales of cotton, separately and collectively, could be calculated by anyone with knowledge of the market report of the day. It is evident that the memorandum relating to this cotton was not put in as original evidence, speaking for itself, but as used by the witnesses to refresh their recollection of facts which otherwise might have been forgotten, and was placed before the jury to assist them in the same respect. This course of proceeding was entirely proper, and, if coupled with satisfactory proof of the ignition of the cotton by the engines of appellant, and through the negligence of its servants,

afforded proof from which a jury might have found that the value of the cotton was $2,509, which was directly testified to by the witness, Austin. The memorandum, we think, was an important part of the evidence, because without it the difficulty of any witness stating the individuality, weight, and grade of each of these fifty-one bales of cotton would be serious, and his attempt 'to do so would naturally excite a suspicion. of incredulity. That books and memoranda of transactions of every kind, when shown to be correct, may be laid before the jury for their information and assistance, is held, perhaps, by all the authorities. 1 Greenl. Ev., sec. 436 *et seq.*

2. It is objected to a recovery by the plaintiff below because it alleges him to be guilty of contributory negligence in suffering his cotton to be stored in a dangerous place. While it is true that the railroad company is presumed to have paid for the right of laying its tracks along Pearl street, yet the owners of the lots abutting Pearl street are not precluded from their use for any purposes for which they are suitable. It merely puts upon the owners the risks arising from the non-negligent use of its railroad by the company operating on the track, and nothing more. The company itself is under a duty of not exposing the property upon the adjacent lots to the risk of fire arising from the negligent operation of its engines. And its duty in this respect is measured by the nature of the property stored upon the adjacent lots as to its inflammability. It is our opinion that it cannot be said, as a matter of law, that the use of the hospital lot for the temporary storage of cotton was in itself, under the circumstances disclosed by the evidence, contributory negligence. That question should have been left, as by the learned judge it was left, to the jury, especially as it was shown that the compress company used tarpaulins for covering the cotton, and had a watch there day and night, with barrels of water and other facilities for extinguishment of sparks of fire.

3. It appears that appellee had not been able, until the trial

had proceeded quite far towards its conclusion, to fix upon what precise engine had emitted the sparks that ignited his cotton, and gave in evidence the emission of sparks by engines, which the evidence on the part of appellant made it probable were not emitted by the engine whose sparks destroyed the cotton, and a reversal of the judgment is earnestly insisted upon for that cause. But if such evidence was improper, yet other evidence of the emission of sparks in great quantities, and many of them larger than a proper spark arrester would allow to issue through its meshes, was introduced, reasonably sufficient to support the finding of the jury. If the evidence objected to had been excluded, it is hardly probable the jury would have found a different verdict.

The tracing and identification of these fifty-one bales of cotton through the books of Fried and the books of the press association, both proven to have been correct, and the storing of them upon the hospital lot, where many hundreds of bales of cotton were burned, with proof of all the necessary incidents for arriving at their value, with no contradicting evidence, made the proof quite strong that Fried's burned cotton was of the value of $2,509, and supported the peremptory instruction in that particular. And the evidence of the great quantities of sparks emitted from appellant's engines, many of them as large as the ends of the fingers of the witnesses, blown by a fierce gale directly towards the cotton, generated apparently by the rapid and unlawful rate of speed up the aclivity of Pearl street, or caused by the want of reasonable care on the part of the servants of appellant in other respects, tends to support the finding of the jury.

4. One witness for plaintiff below testified that when he got to the fire about six or seven bales were on fire; that it was burning pretty fast, and that the wind was blowing; and that the fire department got with the wind, and threw water on the fire, and knocked fire everywhere, and it then began to burn everywhere; and, upon this brief and sole statement upon this

point, appellant insists that the principle of law that, where an injury happens from two efficient causes, the .plaintiff, when suing one only of the wrongdoers, must show the particular part of loss inflicted by him. We think there is not enough of evidence here upon this point to call for the application of the principle invoked.

*We find no error in the proceedings, and the judgment must be affirmed.* ꞏꞏꞏꞏꞏꞏꞏ.