Alabama & Vicksburg Railway Company *v.* Aetna Insurance Company, and

Alabama & Vicksburg Railway Company *v.* David J. Schlenker.

TWO CASES.

1. **Railroads.**   *Fines.*   *Storage of cotton near track.*   *Contributory negligence.*

    The storage of cotton bales in rows, tier above tier, with a passage way between the rows, ninety feet from a railroad track, tarpaulins being spread over the bales, but leaving part of the cotton near the ground unprotected, does not constitute such contributory negligence as will defeat the owner's recovery from the railroad company for the negligent burning of the cotton.

2. **Same.**   *Evidence.*   *Escape of sparks.*   *Other engines.*   *Other times.*

    In an action against a railroad company for the negligent burning of property, claimed to have been ignited by sparks escaping from defendant's locomotives, evidence of the emission of sparks from other of defendant's locomotives, within a reasonable time before and after the starting of the fire in question, is admissible.

3.   Same.

   Alabama, etc., Ry. Co. vs. Fried, 81 Miss., 314, a suit for damages
      resulting from the same fire as the one involved in these cases
      explained.

From the circuit court of Warren county.

Hon. George Anderson, Judge.

The Aetna Insurance Company, appellee, in one of the cases, was plaintiff therein in the court below; Schlenker, appellee in the other case, was the plaintiff therein in said court. The railway company, appellant in both cases, was defendant in them both in that court. From a judgment in each case in favor of the plaintiff therein, the defendant appealed to the supreme court.

In January, 1903, some cotton belonging to the Mayer Cotton Company and also some belonging to appellee Schlenker, was destroyed by fire. The cotton which belonged to the Mayer Cotton Company was insured by the Aetna Insurance Company, and it paid the loss, and took an assignment of the owner's rights on account of the loss. The suits were brought by the respective plaintiffs to recover the value of the respective lots of cotton, each plaintiff alleging that the fire was caused by the negligent emission of sparks from defendant's locomotives. It was shown in evidence that the cotton was in the hands of a compress company, and was stored by it in a vacant lot on the east side of defendant's railroad tracks in Vicksburg, known as the "Hospital Lot," about 90 feet from the track; that the cotton was in rows, tier above tier, with a passage between the rows; that tarpaulins were spread over the cotton, which reached down nearly to the ground, but left part of the cotton near the ground unprotected by them; that the grade in the railroad track along by the lot is considerable; that just before the fire which destroyed the cotton, three of defendant's locomotives passed, going twelve or fifteen miles per hour; that there was a high wind blowing from west to east—towards the hos-

pital lot from the railroad track—and it was very dry. There was some evidence, introduced by plaintiff over objection of defendant, showing the emission of sparks just before and just after the fire by engines other than the ones claimed to have set out the fire. The court refused the following instructions asked for by defendant:

"Fourth, The court instructs the jury for defendant that, as the compress company placed this cotton in an open lot in close proximity to the railroad track, extra care of said cotton was demanded, and it devolved upon the compress company to show increased vigilance, and, if the said compress company failed to exercise said extra care or show said increased vigilance, and if the engines of defendant were properly equipped and managed, then the loss, if any, must fall upon the plaintiff, and the jury must find for the defendant."

"Sixth, The court instructs the jury for defendant, if the owner of property adjacent to a railroad has been careless or imprudent in the management of his property with reference to a possibility of a fire, the railroad company is not liable."

*McWillie & Thompson,* for appellant in both cases.

The court below recognized the well-settled rule that those who place inflammable material so close to a railroad track as to be in danger of emission of sparks assume the risk of loss by fire, but refused to give any instruction as to the duty of the party assuming such risks which did not include the idea of complete freedom of negligence on the part of the railway company, and refused to give defendant's third instruction which did include that idea. This was a queer view to take of the doctrine of contributory negligence which has no operation disconnected with negligence on the part of the defendant. The very idea of contributory negligence of the owner assumes some negligence on the part of the railroad company. *Collins* v. *Railroad Company,* 5 Hun., 499; s. c., 71 N. Y., 609; *Ross* v. *Rail-*

*road Company,* 6 Allen (Mass.), 92; *Smith* v. *Railroad Company,* 37 Mo., 287; *Railroad Co.* v. *Bartlett,* 6 S. W. Rep., 549; *Allibone* v. *Railroad Co.,* 2 Tex. App. (67 Cas.), 52; *Railroad Co.* v. *Levi,* 59 Tex. App., 674; s. c., 13 Am. & Eng. Railroad Cases, 464; *Post* v. *Railroad Co.,* 108 Pa. St., 585; *Railroad Co.* v. *Shamfelt,* 47 Ill., 497; *Coates* v. *Railroad Co.,* 61 Mo., 35; *Ruse* v. *Railroad Co.,* 85 Ala., 497.

The court below also carried its erroneous idea of the law into the instructions for the plaintiff.   While it is not negligence *per se* for one to store his baled cotton in a yard in close proximity to a railroad track, the question of whether or not the act in so doing is negligence is one for the jury under all the circumstances of the case.   In a well considered case before us, the plaintiff asked and obtained the following instruction:

"You are instructed that the plaintiffs had a right to place their cotton upon their cotton yard, and in so doing they would not on this account alone be guilty of negligence, although said cotton yard was in close proximity to defendant's roadbed."

The judgment for plaintiff was reversed, the court after distinguishing the use of such a place for materials not inflammable as brick, etc., saying: "So in the use of a yard contiguous to a railway track for the purpose of storing baled cotton, which as a matter of common knowledge is inflammable and easily ignited, it necessarily results that the cotton will be subjected to some danger from fire, it might be doubtful if the storing of baled cotton in such a place was a prudent act and the question should be submitted to the jury."   The court further mentions the "necessity of leaving the entire question of negligence to the jury, under all the evidence." *Texas, etc., R. Co.* v. *Levi,* 13 Am. & Eng. R. R. Cas., 464.

In the *Fried Case,* 81 Miss., 314, it was expressly decided by this court that while the placing of the cotton on the Hospital Lot was not negligence *per se,* the question of contributory negligence in placing it there was one to be submitted to the jury.

Little can be said of the prudence of any one who would put cotton on the lot in question if one-tenth of what plaintiff's witnesses say be true as to the exposure to sparks and frequency of fires. The instructions granted the plaintiff assume that there was an entire absence of negligence in the placing of the cotton on the lot in question by confining the consideration of the jury to the alleged negligence of the defendant.

The engines in the cases now before us are clearly identified as switch engine No. 419, which carried up the circus cars and the passenger engine operated by Lewis, engineer, the number of which could have readily been obtained if it was necessary to prove the identity of the same by number.

Witnesses for the plaintiff were allowed to testify over defendant's objection as to the emission of sparks and fires at other times and places without identifying the particular engine, and also to testify as to the emission of sparks by engines pulling up the steep incline leading down to the river, where the conditions were entirely dissimilar from those along Pearl street at the location of the hospital lot.

As the court will see the error of the court below was carried into the instructions given in favor of the plaintiff, the jury being allowed by plaintiff's fifth instruction to take into consideration the fact of the emission of sparks from any engine of the defendant at the date of the fire. On this subject we refer the court to the authorities cited in our brief in the *Fried Case,* as reported, 81 Miss., pp. 315-320.


*McLaurin, Armistead & Brien* and *Catchings & Catchings,* for appellee in both cases.

It will be observed that while the witnesses for appellee proved that three locomotives had passed the hospital lot shortly before the fire, they were not only unable to show which of the three locomotives set out the fire, but could not specifically identify the three locomotives themselves. They testified that

one of them was a passenger and the other two switch engines, but they could not distinguish them from the other passenger and other switch engines in use by appellant.   Under these circumstances, the courts are practically unanimous in holding that testimony as to the emission of sparks of undue size, or in excessive quantity, by locomotives generally, at or about the time of the fire, is competent as showing the habitual use by the defendant railroad of improper spark arresters.

In the case of *Richardson* v. *Grand Trunk Ry. Co.,* 91 U. S., 454, the evidence of plaintiff "tended to show that the fire was communicated from one of the locomotive engines belonging to plaintiff in error," which passed shortly before the fire, but the court nevertheless held that "the particular engines not being identified," evidence of the throwing of sparks by the locomotives of defendant generally was competent.

From the very nature of the case, it is rarely possible to find persons who actually saw a locomotive or locomotives which passed the property destroyed emitting sparks of extra size, or in undue and unnecessary quantity.

"When a fire is started by a locomotive which cannot be identified, the plaintiff may introduce evidence showing the habitual use by the company of improper spark arresters.   *Gowan* v. *Glaser,* 10 Atl., 417.

"But the evidence is properly confined to such as tends to show the prevalence of the habit at or about the time of the fire complained of." *Davidson* v. *St. Paul R. R. Co.,* 34 Minn., 51.

"Evidence that at other times sparks from fire had been thrown from locomotives to a greater distance from the track than the buildings destroyed, such as were liable to set fire to objects, is admissible." *Sheldon* v. *Hudson R. Co.,* 14 N. Y., 218, and cases.

"Evidence of the emission of sparks by the defendant's engines, both prior and subsequent to the time of the fire sued for, is admissible." *Home Ins. Co.* v. *Penn. Ry. Co.,* 11 Hun. (N. Y.), 182.

"It is proper to prove that the company's engines had about the time of the fire in question, and at other places, some as much as twenty miles distant, emitted sparks, the proof being proper, both for the purpose of showing negligence, and for the purpose of showing that the fire in question originated from the company's negligence. *T. & P. R. Co.* v. *Land,* 3 Tex. App., 74; *Gulf, etc., R. Co.* v. *Holt,* 11 Am. & Eng. Cases, 72; see also 56 Am. & Eng. Cases, 91.

"It was competent to show the manner in which defendant's engines emitted fire shortly after the time of the fire in question.—*Pittsburgh R. Co.* v. *Noel,* 77 Ind., 110.

A very well considered case, *Inman* v. *Railroad Co.,* 90 Ga., 663, very clearly lays down the rule as to the admissibility of evidence of other fires:

"Where the engine that causes the fire cannot be fully identified, evidence that the defendant's engines frequently emitted sparks on the former occasion near the time of the fire in question, is generally held relevant and competent to show habitual negligence and to make it probable that plaintiff's injury proceeded from the same quarter; but when the engine is identified the same reason does not operate and evidence as to the condition of other engines and of their causing fires is clearly irrelevant."

In this case as in the *Fried Case,* counsel for the railway company sought to have submitted to the jury the question as to whether or not the compress company was guilty of contributory negligence in storing the cotton on the hospital lot in close proximity to its tracks, and in both cases the lower court refused the instructions which sought to submit this question to the jury, holding, under the authority of the case of *Home Ins. Co.* v. *Railway Co.,* 70 Miss., 119, that as a matter of law no contributory negligence had been shown. In that case it appeared that the property destroyed by fire was a saw mill situated about twenty-one feet from the railroad track, and that the ground around the mill was covered with a deposit of dust,

shavings and other inflammable matter. The owners of the mill instituted suit against the railroad company, claiming that the fire had been set out by one of its locomotives, and the defendant was granted an instruction submitting to the jury the question of the plaintiff's contributory negligence in maintaining his saw mill under these conditions. This court reversed the case on appeal, saying:

"The weight of authority, however, and the better reason, in our opinion, is that one who uses his land in a natural and ordinary way, for purposes to which it is suited, is not required to anticipate negligence by the adjacent railway company, and his failure to so manage his business as to protect his property from loss against such negligence is not contributory negligence on his part which will prevent a recovery against the company."

The court also quoted with approval the following language used in the case of *Salmon* v. *Railroad Co.,* 38 N. J. L., 5:

"A person is not called on to anticipate negligence on the part of another, and, by way of prevention, to make provision against its effects. The fire in question, upon the facts stated in these pleadings, was caused solely by the illegal act of the defendant, and there is no provision of law which required the plaintiff to foresee the doing of such an act, and to put his own land in a situation to withstand its effect. He owed no duty to the defendant in this respect, and consequently negligence, in its legal sense, cannot be imputed to him."

In the case at bar the testimony shows that the compress company did far more than merely to use the hospital lot in its natural and ordinary way. It did, in fact, take active precautions to prevent the cotton from being fired by appellant's locomotives. It kept watchmen on the ground night and day, whose duty it was to watch the cotton with particular reference to passing locomotives, and in addition to this, the rows of bales nearest the railroad track were covered with tarpaulins, while barrels of water to be used in extinguishing fires, were kept at

convenient intervals.    If appellant negligently permitted fire
to escape from its locomotives, it cannot complain that the pre-
cautions adopted by the compress company were insufficient to
avoid losses from its negligence.

As we have said, this precise question was before this court
in the *Fried Case,* and that case was affirmed.    While it is
true that the opinion inadvertently stated that this question was
submitted to the jury, the court's attention was called to this
error by suggestions of error filed by both parties to the appeal,
and it nevertheless refused to disturb its affirmance of the
judgment of the lower court.    This refusal must have resulted
from the conviction that the action of the lower court in refus-
ing to submit the question of contributory negligence to the
jury was correct.

Argued orally by *T. A. McWillie,* for appellant, and by
*A. A. Armistead* and *O. W. Catchings,* for appellee.

Whitfield, C. J., delivered the opinion of the court.

These two cases are submitted together, as they depend upon
the same state of facts.    We do not think any of the objections
made by appellant worthy of serious consideration except these
two: First, that the compress company was guilty of contribu-
tory negligence in placing the cotton where it was; and, second,
that it was error to have admitted testimony showing the emis-
sion of sparks just before and just after the fire in question, by
other engines than the three which appellant claims must have
set out the fire.    In respect to the first proposition, counsel for
appellant say in their brief: "We are not insisting that the act
of so placing the cotton was negligence *per se,* nor, at present,
that the question of whether or not the act of so placing it con-
stituted negligence should have been submitted to the jury, but
that the question of whether or not proper precautions were
taken to guard against the recognized danger should have been
submitted to the jury."    But their citation of authorities and

argument are almost wholly addressed to the purpose of show-
ing that it was contributory negligence on the part of the com-
press company to store this cotton in its own lot in the usual
and ordinary way, some ninety feet from the railroad track.
So far as proper precautions are concerned, we think the testi-
mony abundantly shows the taking of all proper precaution by
the compress company.   So far as the contention that it was
contributory negligence on the part of the compress company
as to where the cotton was placed is concerned, it is sufficient to
say that this was disposed of by the case of *Home Ins. Co.* v.
*Railway Co.,* 70 Miss., 134, 12 South., 159.   The sharp con-
flict in authorities on this subject was recognized in that case,
and this court, upon the fullest consideration, aligned itself
with those which hold "that one who uses his land in a natural
and ordinary way, for purposes for which it is suited, is not
required to anticipate negligence by the adjacent railway com-
pany; and his failure so to manage his business as to protect
his property from loss against such negligence is not contribu-
tory negligence on his part."   As said by Chief Justice Beasley
in the case of *Salmon* v. *Delaware Railroad Company,* 38 N. J.
Law, 5, 20 Am. Rep., 356: "No support in any of these
authorities can be found for the assumption that, if a land-
owner places his stacks of grain or hay on the confines of his
land, that thereby, in a legal point of view, he becomes a con-
tributor to a fire occasioned by negligence on the land of his
neighbor.   By such an act, it is true, he takes the risk of the
consequences of an accidental fire on the contiguous premises,
but not of a neglect which he can be called upon either to antici-
pate or to guard against."   The principle is that where one is
making that use of his property for which it was intended, and
is so using it in the way in which it would usually and ordina-
rily be used for that purpose, he is strictly in the exercise of a
legal right — merely asserting a legal dominion over his own;
and that, per consequence, contributory negligence is not legally

predicable of that sort of use of his property.   An act, to constitute contributory negligence, must be an act, as to place and time and circumstances, illegal in its nature; and it is a mere confusion of thought to characterize as contributory negligence the use of one's own property in a purely legal way.   It is not that the doctrine of contributory negligence in the field of its proper operation is at all infringed; but that that doctrine has no field for operation in the condition of facts stated.   It might have been sufficient to say that the case of *Railway Co. v. Fried,* 81 Miss., 314, 33 South., 74, distinctly reaffirms the doctrine of *Miss. Home Ins. Co. v. Railway, supra.*   Justice Terral, speaking for the court, said: "It merely puts upon the owners the risks arising from the nonnegligent use of its railroad by the company operating on the track, and nothing more.   The company itself is under a duty of not exposing the property upon the adjacent lots to the risk of fire arising from the negligent operation of its engines."   And it is insisted lastly by counsel for appellant that the *Fried Case* decided in the next two sentences that the court should have submitted to the jury whether the very use of the compress company's own property in the usual and ordinary way for the purpose for which it was suited, which the court had just said could not present a case in which contributory negligence could be charged against the compress company, constituted or not contributory negligence.   This would put the court in an inconsistent attitude.   Manifestly, the court had just decided in the language which we have quoted that, if the compress company was merely using its lot for the storage of cotton in the usual and ordinary way — the way suited to its use as a cotton storage lot — then it was legally impossible that in such use it could be guilty of contributory negligence, within the proper understanding of what contributory negligence is.   Of course, having decided just that thing, the court did not mean by the inadvertent expression in the opinion that the question of contributory negligence was left

by the learned judge to the jury, to reverse its previous declara-
tion.    It was not so left to the jury.    What was meant — as
shown by the last two clauses of the second paragraph of the
opinion, taken in connection with the declaration just men-
tioned in the foregoing part of the second paragraph — was
simply this: that the question whether the compress company
was guilty of contributory negligence in the use of its lot by
using it in a way not usual and not ordinary, a way not suitable
for proper cotton storage thereon, should have been left to the
jury.    In other words, all that was meant to be said was that it
was for the jury to say whether the compress company was
devoting its lot to an improper use in putting cotton there —
whether the storage of cotton on that lot was an improper use
to put that lot to — one not usual or ordinary.    It would be a
question of fact whether the lot was suitable for cotton storage,
and whether the storage of cotton thereon was a usual and ordi-
nary use of the lot; and that might have presented for the jury
a question of contributory negligence or not.  · But it was not
meant (granting that the lot was suitable for cotton storage,
and granting that such use of the lot was a usual and ordinary
use) that any question of contributory negligence could arise to
be submitted to the jury.    It was simply one of those inad-
vertent expressions thrown off by the judge writing the opinion
*currente calamo,* but not one which ought to have been mis-
understood in view of the plain declaration of said paragraph
2 of said opinion affirming the doctrine of the *Miss. Home Ins.
Co. Case.*

As to the second proposition.    It is distinctly held by the
supreme court of the United States in *Grand Trunk Railway
Co.* v. *Richardson,* 91 U. S., 470, 23 L. Ed., at page 362, that
it is competent to prove the emission of sparks capable of set-
ting out fire before and after the fire was set out, and about that
time, without identifying the particular engine which set out
the fire in a particular case.    That court on that subject says:

"The third assignment of error is that plaintiffs were allowed to prove, notwithstanding objections by the defendant, that at various times during the same summer before the fire occurred, some of the defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those which the plaintiffs claimed communicated the fire was among the number, and without showing that the locomotives were similar in their make, their state of repair, or management, to those claimed to have caused the fire complained of. The evidence was admitted after the defendant's case had closed. But, whether it was strictly rebutting or not, if it tended to prove the plaintiff's case, its admission as rebutting was within the discretion of the court below, and not reviewable here. The question, therefore, is whether it tended in any degree to show that the burning of the bridge, and the consequent destruction of the plaintiff's property, were caused by any of the defendant's locomotives. The question has often been considered by the courts in this country and in England; and such evidence has, we think, been generally held admissible, as tending to prove the possibility, and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company. *Piggot* v. *R. R. Co.,* 3 M. G. & S., 229; *Sheldon* v. *R. R. Co.,* 14 N. Y., 218, 67 Am. Dec., 155; *Field* v. *R. R. Co.,* 32 N. Y., 339; *Webb* v. *R. R. Co.,* 49 N. Y., 420, 10 Am. Rep., 389; *Cleveland* v. *R. R. Co.,* 42 Vt., 449; *R. R. Co.* v. *Williams,* 44 Ill., 176; *Smith* v. *R. R. Co.,* 10 R. I., 22; *Longabaugh* v. *R. R.,* 9 Nev., 271. There are, it is true, some cases that seem to have asserted the opposite rule. It is, of course, indirect evidence, if it be evidence at all. In this case it was proved that engines run by the defendant had crossed the bridge not long before it took fire. The particular engines were not identified, but their crossing raised at least some probability, in the absence of proof of any known cause, that they caused the fire; and it seems to

us that under the circumstances this probability was strengthened by the fact that some engines of the same defendant at other times during the same season had scattered fire during their passage."

It will be observed that such testimony is held to be competent on the ground that, though it is not direct evidence, it nevertheless does tend to prove the possibility, and the consequent probability, that some locomotive caused the fire, and that it further tends to show a negligent habit of the officers and agents of the railroad company. It will be further observed that the United States supreme court in this case admits that there are authorities to the contrary, but states that the conclusion it reached was the one sustained by the weight of authority in this country and in England. In the valuable note to this case there is the most abundant citation of authorities on all related propositions, and on this particular proposition it is laid down as settled that such evidence is competent. See cited, amongst many other authorities, *Henry* v. *R. R. Co.,* 50 Cal., 176; *Smith* v. *R. R. Co.,* 10 R. I., 22; *Annapolis & E. R. R. Co.* v. *Gantt,* 39 Md., 115; *Cleveland* v. *G. T. R. R. Co.,* 42 Vt., 449. And, indeed, it is pointed out in this note that, in order to raise a case of negligence by destruction by fire of property adjacent to a railroad in New York it is required to show by additional proof "that defendant's engines had at other times before or after the burning set out other fires"; thus, of course, recognizing the competency of such proof. This general rule we understand to be settled in the *Tribette Case,* in 71 Miss., at pages 228-231, 13 South., 901. In that case the court held competent the testimony of Lewis Harvey for the plaintiff to the effect "that about three miles north of Terry he saw on a clear, sunshiny day, plenty of sparks flying from the engine, and firing grass beyond the railroad's right of way." This testimony was offered to show a setting out of fire three miles from the place where the fire occurred. As said by Justice

Woods in that case: "It does not at all militate against this view that appellant is unable to say which of the two engines was the cause of the fire. It is not of vital importance to establish what engine did the work. The essential inquiry is, did an engine of appellee cause the conflagration?" We think the rule stated by the supreme court of the United States is the sound rule on this point. Besides, there was no identification in this case of any engine as being the one which set out the fire.

*Affirmed.*