KNICKEL and another, Respondents, vs. CHICAGO & NORTH-
WESTERN RAILWAY COMPANY, Appellant.

*November 18—December 13, 1904.*

*Railroads: Negligence: Fires: Dilapidated buildings: Carelessness:
Court and jury: Instructions to jury: Special verdict.*

1. Defendant railway company maintained upon its right of way a very old and dilapidated warehouse, the roof never having been repaired or reshingled in about thirty years. The shingles and roof boards were rotted, the former being loose and curled up and in many places missing entirely, so as to expose the roof boards. There was no charge of defective apparatus or of negligent operation thereof. Defendant's locomotive communicated fire, by sparks, to such warehouse, which fire, aided by a high wind, was communicated to plaintiff's premises. *Held*, that the jury were warranted in finding defendant's conduct negligent, if the other element of reasonable anticipation of injury were also found.

2. One may be as careless as he pleases with reference to his own property and not be charged with negligence in law, unless an ordinarily prudent person might reasonably anticipate that such carelessness might probably result in injury to others.

3. In an action for negligently permitting fire to escape from defendant's premises and communicate to plaintiff's building whereby it was destroyed, in connection with a question of the special verdict as to whether defendant's acts were the proximate cause of plaintiff's loss, the court instructed the jury, that it might be such proximate cause when such injury was the natural and probable consequence of the negligence, and "when in the light of all the attending circumstances, the party chargeable with such negligence should reasonably have foreseen that it might cause some similar injury." The court also charged that they might answer the question in the affirmative if they found "that the defendant company, acting through its proper representatives and servants, should reasonably have foreseen, before the fire occurred, that such negligence might result in communicating fire to other property." *Held*, that such instruction was erroneous in that it permitted the jury to use as a standard their ideal of what the defendant ought to have anticipated, instead of that which an ordinarily prudent person, under like circumstances, would have anticipated.

4. Such error is, however, cured by the submission of another question of the special verdict, in which the jury were given the correct standard and under which they found the element of anticipation.

5. In framing a special verdict, it is not to be expected that the court will attempt to embody all the facts and circumstances as in a hypothetical question to an expert; hence, where fire had originated by sparks from defendant's locomotive, in submitting to a jury a question of a special verdict, it is not error to refuse to incorporate in such question after the word "locomotive," the words "properly equipped with proper spark-arresting machinery in good condition."

APPEAL from a judgment of the circuit court for Fond du Lac county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

On October 30, 1901, the defendant, without negligence in the construction, repair, or operation of its locomotive, communicated fire, by sparks, to a warehouse permitted to remain upon its right of way some forty-two feet from its main track, which fire, by reason of a very high wind, and

aided by the dilapidated condition of the warehouse, to be hereinafter mentioned, was communicated to plaintiff's premises about forty rods away, whereby his barn and considerable personal property was destroyed. The warehouse in question was very old and dilapidated, roof never having been repaired or reshingled in about thirty years of the life of the building, the shingles and roof boards being rotted, and the former loose and curled up, and in many places missing entirely, so as to expose the roof boards. The jury, by special verdict, found the defendant guilty of negligence in permitting the warehouse to remain where it was, which was the proximate cause of the burning of plaintiff's property; which result ought, by a man of reasonable care and prudence, under the circumstances, to have been reasonably anticipated. After motion to reverse the answers to such questions and to set aside the verdict and grant a new trial, judgment was entered in favor of the plaintiff, from which the defendant appeals.

*Edward M. Hyzer,* for the appellant.

For the respondents there were separate briefs by *T. L. Doyle,* for respondent *Knickel,* and by *M. L. Lueck,* for respondent *Herman Farmers' Mutual Fire Insurance Company,* and oral argument by *Mr. Doyle.*

DODGE, J. 1. The jury having negatived all charges of defective apparatus or of negligence in operation of the same, this case presents nothing of the peculiar liability of railroad companies in the conduct of their inherently dangerous business. It presents a question equally applicable to every property owner who maintains an inflammable building in close proximity to railroad tracks over which engines must pass, emitting, as they always do, some measure of sparks. It may be conceded, for the purpose of discussion, that maintenance of frame buildings with shingle roofs within forty feet of a main railroad track is so common that such act alone is, as

matter of law, not negligence; it being so in accord with the known custom of the great mass of mankind. That, however, is not the question upon which this case turns. Though it be conceded that the maintenance of a sound, solid building near a railroad track is not negligence, must it not be held that some degree of variance from such a condition, whereby ignition from the ordinary perils of the railroad becomes more probable, may be so variant from the ordinary conduct of mankind as to open the door for the jury to characterize it as negligence? It seems this must be so. Indeed, counsel for the appellant does not controvert this view. He seems to concede that, if inflammability was increased by the age and dilapidation characterizing this building, that the door was open to the jury to consider whether it exceeded in that respect buildings maintained by the great mass of mankind, and, if so, to find the conduct negligent in the legal sense, if the other element of reasonable anticipation of injury might also be found.

The principal argument, however, is that there is no evidence that old and decayed wood, when dry, is more inflammable than sound wood, equally dry. Counsel insists that, if such be the fact, it is capable of proof by experts, or those having special experience on the subject. But this discussion ignores other elements in the evidence to the effect that not only were the roof boards and shingles upon the top of this building decayed and old, but that they were loose, curled up, and that in many places the shingles were entirely lacking. These facts seem clearly to present a situation more likely, in common knowledge, to furnish a lodgment for flying cinders than if the roof were sound, and covered with smooth, flat shingles; and that such enhanced peril of ignition presents properly a jury question whether it extended to the degree of negligence, namely, the absence of that care and caution which ordinarily prudent persons do exercise under like circumstances, and so that the ordinarily prudent

person would anticipate that sparks such as fly from the usual locomotive engine might probably lodge and ignite the roof in times of drouth and high wind.

Still another element of possible negligence in the maintenance of such a building is the increased peril that after ignition it may, by reason of its dilapidation, looseness of shingles, and the like, more readily communicate the fire to other buildings. In connection with this idea it is shown that the warehouse was set upon posts three or four feet from the ground, with no inclosure under it, so as to furnish an underdraft of air, giving it almost the effect of a funnel, thus rendering probable, if not certain, the more easy and rapid carrying away of the burning brands, attached so loosely as they were to the roof. This was, of course, an element of the negligence ascribed to the defendant if it increased the probability of communicating fire to other buildings. One may be as careless as he pleases with reference to his own property, and not be chargeable with negligence in law, unless an ordinarily prudent person might reasonably anticipate that such carelessness might probably result in injury to others. We are not prepared to say that the extreme dilapidation of this building in the respects above suggested did not present a case from which a reasonable mind might conclude that there was negligence.

2. By the sixth question of the special verdict the court inquired of the jury whether the negligence of the defendant in maintaining the building in question was the proximate cause of the plaintiff's loss, and, in connection with that question, instructed the jury that it might be such proximate cause when such injury is the natural and probable consequence of the negligence, and "when, in the light of all the attending circumstances, the party chargeable with such negligence should reasonably have foreseen that it might cause some similar injury." Also that they might answer the question in the affirmative if they found "that the defendant company,

.acting through its proper representatives and servants, should reasonably have foreseen, before the fire occurred, that such negligence might result in communicating fire to other property." It is urged by appellant that these instructions are erro˜ɔous, in that they set up as a test merely what the jury think the defendant ought to have anticipated, instead of that which an ordinarily prudent person, under like circumstances, would have anticipated. This subject was quite fully discussed in *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 18 N. W. 764, and in *Dehsoy v. Milwaukee E. R. & L. Co.* 110 Wis. 412, 416, 85 N. W. 973. In the latter case, in speaking of a charge which allowed the jury to consider the care and foresight which might reasonably have been anticipated of the conductor of a street car, we said:

"It permits the jury to use as a standard their ideal of what a conductor ought to be, instead of that which he customarily is, as ascertained by actual human experience and common knowledge. In this, error was committed."

The instruction complained of was erroneous in this respect, and necessitates the conclusion that in the sixth question and answer, standing alone, are not found all the elements of proximate-cause. That question and answer probably did find, under instructions which are not assailed, actual or natural causation, but did not find that element of anticipation by a reasonably prudent man, which in so many cases has been said to be essential. We are convinced, however, that this failure of the jury to find this issue in answer to the sixth question is cured by question 9½, which inquired directly:

"Ought a man of reasonable care and prudence, engaged in the same business that the defendant was in at the time in question, and under similar conditions and circumstances, to have reasonably anticipated that, because of the condition that the Degenhart warehouse was in, it would be likely to take fire from sparks emitted from the stack of a locomotive, and that the burning brands or shingles would be carried

from the fire so started, under similar conditions, to the property of the plaintiff, forty rods away, or to other property as far away in that vicinity, and set fire to the same ?"

In this question the jury were given the correct standard, and have found the element of anticipation which, by reason of the erroneous charge above mentioned, escaped them in the sixth.

The appellant further complains that the court refused to embody in this question 9½, after the word "locomotive," the words "properly equipped with proper spark-arresting machinery in good condition." There was no error in refusing this request. There had been considerable evidence of cinders and sparks of a size inconsistent with such equipment and condition; and while, by the verdict, it is now recognized as a fact that there was no defect, it was one of the controverted issues when the verdict was submitted. The court embodied in the question the duty to consider all the conditions and circumstances, which, of course, included the condition of the engine, as they might find it. Further, however, it is not to be expected that the court shall attempt, in framing a special verdict, to embody all the facts and circumstances as in a hypothetical question to an expert. An attempt to do so would involve much of danger, for any omission might be very misleading.

We find no error well assigned.

*By the Court.*—Judgment affirmed.