THERESA VILLAGE MUTUAL FIRE INSURANCE COMPANY and others, Respondents, vs. WISCONSIN CENTRAL RAILWAY COMPANY, imp., Appellant.

*October 8, 1910—January 10, 1911.*

*Railroads: Fire set by locomotive: Negligence: Piling wood near track: Destruction of neighboring property: Proximate cause: Notice of claim by insurance companies as subrogees: Evidence: Objections: Improper conduct of counsel: Harmless errors: Change of venue: Discretion: Taxation of costs.*

1. A finding by the jury that a fire which started in dry wood piled upon defendant's right of way was caused by sparks from an engine which had passed a short time before, is *held* to be sustained by evidence which justified the rejection of all other alleged causes and tended to show, among other things, that such engines, even when free from defects and properly managed, did commonly emit sparks, although no witness testified to having seen sparks lodge at the place where the fire was first observed.

2. A railway company which as a common carrier is obligated to receive and transport firewood must conduct such business with a degree of care commensurate with the resulting dangers and hazards to the property of others from fire.

3. Upon evidence in this case showing that a very large quantity of wood had been piled on defendant's right of way, so near the track that sparks from passing engines were likely to fall upon it; that private buildings were so near as to be in danger of being destroyed if the wood should be burned; and that the wood had remained there for a long time in a dry and windy season and was in a very inflammable condition, highly susceptible to ignition from sparks, the jury were justified in finding that defendant was negligent in permitting the wood to remain at such place and in such condition. BARNES, MARSHALL, and VINJE, JJ., dissent.

4. Negligence of a railway company in permitting highly inflammable firewood to remain upon its right of way was the proximate cause of the destruction of neighboring property by a fire which was started in the wood by sparks from an engine, where the danger to such property from a burning of the wood was obvious.

5. The notice of a claim for damage to property by fire which must be given to a railway company before an action can be main-

tained and which, under the terms of sec. 1816b, Stats. (Supp. 1906: Laws of 1899, ch. 307), is to be "signed by the party owning such 'property . . . his agent or attorney," may be signed by the assignee or subrogee of the original owner, or by an agent or attorney.

6. Insurance companies which have paid to the original owner the amount of loss on property damaged or destroyed by a fire set by a locomotive are subrogees of such owner and may give the notice prescribed by sec. 1816b, Stats. (Supp. 1906: Laws of 1899, ch. 307).

7. When the object of evidence is plainly indicated by the questions propounded to a witness, and no objection to them is made, a motion to strike out the testimony comes too late.°

8. Improper conduct or remarks of counsel during a jury trial, not appearing to have had a prejudicial effect, are not ground for reversal of the judgment.

9. Trial courts are vested with a large discretion in passing upon applications, under subd. 2, sec. 2622, Stats. (1898), for change of venue on the ground that an impartial trial cannot be had in the county.

10. Under the third paragraph of sec. 2921, Stats. (1898), costs may be taxed for notices given under sec. 1816b, Stats. (Supp. 1906: Laws of 1899, ch. 307).

11. Disbursements for sheriff's fees for serving summons may be allowed in the taxation of costs, although not itemized in the bill.

12. Although the depositions of witnesses had previously been taken, fees for their travel and attendance at the trial were properly allowed and taxed, fees for attendance at the taking of the depositions being disallowed.

APPEAL from a judgment of the circuit court for Dodge county: E. RAY STEVENS, Judge. *Affirmed.*

This is an action to recover the amount of insurance paid by the plaintiffs to Emma Frederich, whose property is alleged to have been destroyed by fire on May 18, 1906, through the negligence of defendant.

The defendant has a right of way and depot grounds which is 200 feet wide, extending through the village of Auburndale, the track being in the center thereof. Through the village the tracks are almost level, but west of it there is an upgrade. The depot is on the north side of the tracks, which

run in a northwesterly and southeasterly direction. Immediately north of the right of way is Connor street, sixty-six feet wide, the principal street of the village. On the north side of Connor street is the only sidewalk on the street. This walk lies in front of the row of buildings which constitute the business portion of the village. Northwest of the depot building and across Connor street from it was, on May 18, 1906, a store building owned and occupied by Mrs. Emma Frederich. Beginning at a line about 400 feet west of the depot building, the piece of ground 75 feet wide and about 277 feet long, lying between Connor street and the track, was leveled and used by the Connor Company for piling wood preparatory to its shipment on the railroad. The village school grounds were across Connor street northwest of this piece of ground, the school building being about 400 feet from it. About half a mile west of the depot and north of defendant's right of way was a sawmill owned by the Connor Company. The Connor Company also owned a general store on Connor street east of the depot building, and had a lime-house near the west end of the ground used for piling wood.

During the winter prior to May 18, 1906, the Connor Company had accumulated between 1,200 and 1,500 cords of wood, and on May 18, 1906, had piled upon the ground used for that purpose upwards of 1,000 cords of wood. About one third of the wood was hard maple and birch, the rest being kiln wood. The kiln wood was cut from dead and down timber, pine, hemlock, and other soft wood, and is described as partially decayed, punky, the bark loose, and the surface rough and fuzzy. It was very dry, the previous several weeks having been unusually dry. The wood was all of cordwood length and was placed in piles from six to eight feet in height, about 150 feet in length, two or three piles being placed together with passageways between them. The wood was ready for shipment, and during the two months prior to May 18, 1906, about 200 cords had been shipped out, about

twenty cords during the four weeks previous to that date. The Connor Company, as a protection in case of fire, a few days before May 18, 1906, placed twelve or fifteen barrels of water about among the woodpiles. On the morning of May 18, 1906, between 11:35 and 11:55 a. m., fire was observed near the center of the piles of wood. It spread very rapidly, driven by a strong southwesterly wind, destroyed the piles of wood, and was communicated to the buildings, destroyed most of them, and Mrs. Emma Frederich's store was also destroyed.

The plaintiffs, who have paid the insurance upon Mrs. Frederich's property which was destroyed, bring this action as subrogees of Mrs. Frederich, and allege that the fire in the wood was started from a spark emitted from a passing locomotive belonging to the defendant.

Between the hours of 10 o'clock and noon on the morning of May 18, 1906, the defendant ran the following trains through Auburndale: A passenger train going northwest arrived at 10:59 and departed at 11:00 a. m.; a freight train going eastward passed through Auburndale at 11:32 a. m.

The defendant claims that the fire was not started by a spark from its locomotive, and that it may have been started by a spark from the Connor Company sawmill, by a spark from a fire in the open which was burning during the morning at the mill, by schoolboys smoking among the woodpiles, by a match or cigar thrown onto the wood by some one passing between the piles, by an incendiary, or by some one going from the Connor store to the limehouse.

Judgment was rendered upon the verdict of the jury, which found that the fire was started from an engine of the defendant company; that the defendant was guilty of negligence in allowing the wood to remain on its right of way in the condition and the surroundings; and that such want of ordinary care was the proximate cause of the burning of Mrs. Frederich's property. There is no dispute as to the amount of damages. This is an appeal from the judgment.

For the appellant there was a brief by *John L. Erdall* and *W. A. Hayes*, attorneys, and *A. H. Bright*, of counsel, and oral argument by *Mr. Hayes*.

For the respondents there was a brief by *Husting & Husting*, attorneys, and *Lamoreux & Husting*, of counsel, and oral argument by *Paul Husting* and *B. A. Husting*.

The following opinion was filed October 25, 1910:

SIEBECKER, J. The jury found that the fire which destroyed the wood piled on the defendant's right of way was caused by sparks emitted from one of the defendant's passing engines. This is assailed upon the ground that the evidence wholly fails to sustain such an inference. It is argued that the evidence shows that the engines in question were without defects and were properly managed while passing through Auburndale at the time the fire is claimed to have originated from sparks emitted therefrom. No negligence is charged as regards the proper condition and the proper management of the engine. The ground on which liability of defendant is claimed is that it was negligent in allowing this wood to remain on its right of way under the circumstances and conditions shown.

Assuming that such engines were free from defects and were properly managed at the time, does the evidence sustain the inference that the fire originated from a spark emitted therefrom? There is evidence in the case tending to show that engines in operation as these were do emit sparks. It appears that this is a common result from operating locomotive railroad engines. The claim is made, however, that on the occasion in question the discharge of sparks from these engines was so reduced on account of very light work required of them in passing through this station that this danger was practically removed, and that the black smoke of the passenger engine and the shutting off of steam power on the freight engine accompanying their passage through the station this day sustain this claim. The evidence on this subject presents

a situation from which conflicting inferences may be drawn, and the jury was warranted in finding that sparks were emitted from these engines as they passed through this station.

The further claim is made that the evidence is too vague and speculative to support a reasonable inference that a spark from either of the defendant's engines actually started the fire. The contention is based on the want of direct evidence that sparks were observed; that the fire began burning at a time too remote from the passing of the last train, in view of the highly inflammable condition of the wood where it started; and that other more probable causes were shown to have existed.

We discover no conditions, as shown by the evidence, from which it can be said that another alleged cause was more likely to have caused the fire than an engine spark. The state of the evidence on this subject well justified the jury in rejecting all the other alleged causes as the origin of this fire. The argument that it could not be possible that the fire began to burn so as to be visible at so remote a time even after the first engine passed, under the existing conditions, is not conclusive. It cannot be said that a spark lodged in the material would not lie for some time in a smouldering state before progressing to a state of flames as first observed on the top of the pile of wood. The facts and circumstances shown are such as to make this an appropriate inquiry for the jury to determine in the light of all the evidence bearing on the question. As stated in *Abbot v. Gore,* 74 Wis. 509, 43 N. W. 365:

"The fact that the engine passed shortly before the fire was discovered . . . is some evidence tending to show . . . that the engine did set the fire, notwithstanding it was in good order and properly managed."

True, no witness testified to having seen sparks from either of these engines lodge at the place where the fire was first ob-

served, but this is not necessary to lead the jury to the conclusion that the fire originated from an engine spark. *Donovan v. C. & N. W. R. Co.* 93 Wis. 373, 67 N. W. 721. The court properly refused to change the answer to the first question.

The jury found that the railroad company was guilty of a want of ordinary care in allowing the wood to remain on its right of way. The court instructed the jury that it was the company's duty to provide a piling place for such wood, and that it was not negligence to permit it to be piled where it did when the wood was received, but that they must determine whether, in view of all the facts and circumstances disclosed by the evidence, allowing it to remain on its right of way near the track and passing trains constituted a want of ordinary care.

The appellant asserts that the obligation of the defendant to receive this wood and place it near its road for shipment rightfully included reception of it in the quantities and at the place it did, and that it properly allowed it to remain there under the conditions and circumstances here shown, and that it exercised ordinary care in the conduct of this business up to the day of the fire. It is undisputed that the defendant as a common carrier was obligated to receive and transport firewood, and that it had the right to conduct such business in the manner that ordinarily prudent and careful persons conduct it under the same or similar circumstances. The question whether the defendant conducted this business in such manner must be resolved in the light of the facts and circumstances disclosed. If the evidence tends to show extraordinary dangers and hazards to the property of others from fire incident to the way defendant conducted this business, then, in the exercise of ordinary care, it was required to exercise a degree of care commensurate with such dangers and hazards. The question then is: Does the evidence present a situation from which the jury could infer that the railroad company was guilty of a want of ordinary care in permitting the wood

to remain as piled, in the light of the existing conditions? An examination of the facts shows that the jury was justified in finding that there was a very large quantity of wood collected on this area near the track where trains passed in such close proximity that sparks were likely to fall upon it; that private buildings were so near thereto as to be in danger of being destroyed from a burning of this wood; that the wood had remained there for a long time in a dry and windy season; and that it was in such inflammable condition as to make it highly susceptible to ignite from sparks by reason of the bark being loose, the surface being rough, splintery, and fuzzy, thus rendering it highly inflammable. From a consideration of such conditions in the situation shown, it was reasonable for the jury to find that the defendant's conduct in permitting the wood to remain in such condition on its right of way was not an exercise of due care on its part. *Knickel v. C. & N. W. R. Co.* 123 Wis. 327, 101 N. W. 690.

It is contended that there is a failure of proof that the negligence found was the proximate cause of the destruction of Mrs. Frederich's property. The peril to this property from a burning of the wood was obvious to any person observing the surrounding conditions. We can perceive no reason for saying that this danger was not to be contemplated as a natural and probable result of the negligence found. *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271.

The owner of the property destroyed by the fire did not give the notice of claim of damages to her property by the fire as prescribed by sec. 1816b, Stats. (Supp. 1906). The only notices given the railway company within the year from the day the fire occurred, demanding satisfaction for damages to this property on account of such fire, were those of the insurance companies. Sec. 1816b prescribes what the notice shall contain and that it is to be "signed by the party owning such property . . . his agent or attorney." It is obvious that the object and purpose of this notice is to notify the rail-

way company that satisfaction will be demanded for alleged damages occasioned by fire set from a locomotive and to apprise it of the time and place of the fire so as to enable the company to make any defense it may have against such claim. This notice is mandatory and a prerequisite to the right to enforce such a claim in the law. *Atkinson v. C. & N. W. R. Co.* 93 Wis. 362, 67 N. W. 703.

A strict construction of the language of the statute would require that all notices be signed by the owner of the property destroyed, his agent or attorney. The object and purpose of the statute is evidently to give railroad companies notice of a claim for damages from locomotive fires, of the person making such claim, and the time and place of fire. We perceive no reason why this purpose is not as fully accomplished when the notice is given by the person holding the claim under an assignment as when given by the original owner of the property. Under such circumstances the statute should receive liberal construction. Considering it in this light, we are led to the conclusion that the rights of the railroad company are fully preserved by a notice conforming to the statute when signed by the assignee or subrogee of the original owner of the property destroyed or by an agent or attorney. The insurance companies stood in this relation to the owner of the property. Their right to maintain action against railroad companies for wrongfully causing a loss, upon payment of the loss to the owner, has been repeatedly affirmed. · *Sims v. Mutual F. Ins. Co.* 101 Wis. 586, 77 N. W. 908, and cases cited. This results in giving them the right to take the necessary steps to enforce the claim against the company for its wrongful destruction of the property insured, and a notice signed by their authority fulfils the calls of the statute. There is no dispute as to the giving of such notice within the limits of the time prescribed. It must be held that the statute has been complied with.

The exceptions to rulings as to the admission and rejection

of evidence we do not find to be well taken. Discussion of all of them is not necessary.

The exception to admission of the evidence of the witness Connor pertains to the failure of the railroad company to furnish cars for shipping the wood. The object of this evidence was plainly indicated by the questions propounded; yet appellant's counsel permitted the witness to be examined on the subject without objection and then moved to strike out the testimony. The court properly ruled that the objection came too late, and therefore refused to strike out the evidence. Furthermore, we discover no prejudice resulting from its admission had the objection been timely. Nor do we discover any prejudicial effect in refusing the instructions requested, that there was no evidence on the subject of not furnishing cars when demanded.

Error is assigned that the court erroneously permitted the jury, under its instructions, to find that the fire was set by engines other than the two referred to in the evidence. This is negatived by the direction given them that they were to consider only such engines as the evidence showed passed the piles of wood.

It is urged that the remarks of counsel pertaining to the production of the notices served on appellant; his conduct in propounding improper inquiries to the appellant's claim agent and section foreman; his assertion that engines generally emitted sparks and that defendant should have piled its wood where it thereafter piled it, namely, a mile or two distant, all operated to prejudice the jury to an extent so as to render them incapable of arriving at a just verdict. We are not persuaded that counsel's conduct had such prejudicial effects, and do not think that the conclusion of the trial court should be disturbed.

The denials of the applications for change of venue are abundantly justified by the record. Trial courts are vested with a large discretion in passing upon such applications.

The facts before the court in this case, as presented in an unusually large number of affidavits and by the subsequent examination of the jurors on the subject, clearly show that the trial court properly held that no grounds were shown calling for a change of venue of the case.

Upon defendant's motion for a review of the taxation of costs by the clerk, the court modified the clerk's action by striking out certain items taxed, and refused to modify the bill allowed as to the following items:

$2.88 for notices under sec. 1816b, Stats. (Supp. 1906: Laws of 1899, ch. 307). This was proper under the third paragraph of sec. 2921.

$36.90, sheriff's fees for serving summons. Appellant contends the charge should be itemized to authorize its allowance. There is no affirmative showing that the item is excessively incorrect. Under *Jones v. Foster,* 67 Wis. 296, 313, 30 N. W. 697, the court properly allowed this item.

$35.40 for stenographer's fees in taking a deposition before a justice of the peace. Upon objection to this item the bill was amended by changing the charge so as to make it a fee of the justice. The item then equaled the twelve cents per folio allowed the justice. This item as finally charged was the correct amount to which the justice was entitled.

Certain witness fees allowed by the clerk were held improper by the court because such witnesses were allowed fees for attendance both at the taking of their depositions and also at the trial. The court refused to allow fees for their attendance while their depositions were taken, and allowed a *per diem* and fees for travel for attending court during the trial of the cause. This was proper and correct.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.

BARNES, J. (*dissenting*). It is undisputed that the wood burned in this instance was a commercial article piled for

shipment, and for that purpose only, on the defendant's right of way. It is not claimed that it was not the duty of the defendant to furnish the piling ground. The trial court so charged the jury. The sole and only ground of negligence found was that the defendant was guilty of a want of ordinary care in allowing the wood to remain on its right of way.

There is some very indefinite and uncertain testimony in the case to the effect that more of the wood would have been shipped previous to the time of the fire had all the cars ordered been furnished. There is no pretense that all or any considerable portion of it would have been moved had the cars demanded been supplied, and there is absolutely no evidence in the case to sustain a claim that the failure to furnish cars was the proximate cause of the damage which plaintiffs seek to recover in this case, and no such finding is made. We have before us a situation where the defendant furnished a shipper piling ground for wood on its right of way which the shipper had not attempted to move at the time of the fire. The wood had been delivered on the right of way during the winter of 1905–6, and up to and during the month of April, 1906, the fire occurring on May 18.

The importance of this case is not measured by the amount involved. Indeed its consequences may and probably will be far reaching. It is sometimes said that precedents are of little value in negligence cases, because it seldom happens that two cases are alike in their facts. The statement is more nearly correct as applied to personal injury actions than to others where recovery is sought on the ground of negligence, and yet there is hardly an assignment of causes disposed of in this court where former decisions are not cited in personal injury cases as being decisive on questions of negligence or contributory negligence.

To my mind the case presents no situation that is either extraordinary or unusual. On the contrary, it presents one that is common and usual in the timber-producing section of

Wisconsin, which comprehends a large part of its area. The weather had been dry for some time before the fire, but dry spells are common any time between April 1st and November 1st. There was nothing about the quantity of the wood to suggest an unusual condition. It hardly covered two thirds of an acre. It was probably no greater than the average amount of forest products that would be found piled for shipment at stations of defendant in a timbered country. There is nothing unusual about the damage which might result in case of fire. A fire started on a right of way miles from any building might well be more destructive to property than one starting where the fire in question did. The material was combustible, but not more so than vast quantities of other material found piled along railway tracks during the spring and summer months. Some of it was kiln wood and was very much decayed and rotten. I apprehend it would be no great task to secure plenty of witnesses who would truthfully testify that in their opinion dry rotten pine and hemlock wood was no more combustible than sound wood of the same kind that was thoroughly dry, and this court would be concluded by the verdict of a jury on that question of fact. If there was any unusual or extraordinary condition in this case a like condition would be found to exist by a jury, or by a court for that matter, if the material piled on the right of way had been dry hemlock bark, dry cedar poles or posts, dry pulpwood, dry mixed fuel wood, birch logs, green or dry, dry pine logs, or green ones for that matter, when pitchy, dry lumber, or even dry hardwood or hemlock logs, as well as other kinds of raw and manufactured material that might be mentioned. A spark lodging in an opportune place for setting a fire, fanned by a wind, would start a conflagration in any of the commodities mentioned.

The tonnage in raw forest products in Wisconsin is very great. The material is very bulky, and much of it must be handled as economically as possible to have any margin of

profit that would warrant handling it at all. As to some kinds of such material at least, the difference between the cost of shipping it dry or green may determine whether it can be handled at all. In the past vast quantities of hardwood have been burned because it could not be delivered at the consuming market at a price that would justify its conservation. Green mixed firewoods could not be moved any considerable distance to market at the present time. A large part of this raw material, such as sawlogs, poles, posts, tanbark, pulpwood, and cordwood, is cut by farmers and small jobbers who haul the same to the railroads during the winter months. Much of it is piled with the purpose and intention of leaving it to dry out so that it can be shipped at a profit. Much of it is not sold when delivered and is not intended for shipment until the owner can make an advantageous sale.

It may be that the methods heretofore in vogue in carrying on business in certain portions of the state have been reckless and negligent and that it is time to call a halt. Certainly a change in that method will entail a great deal of loss, which will bear heavily on the pioneer farmers and small contractors who can ill afford it. We have various statutes requiring carriers to furnish reasonably adequate shipping facilities. Storage room for timber products along a railway is almost an indispensable facility in the shipment of timber products. In this connection reference is made to secs. 1797—3, 1797—9, 1798, 1800, 1801, 1802, 1802a, and 1831a, Stats. It seems to me that the decision places the railway companies in the position where they must choose between the alternative of receiving and storing forest products and paying all damages that may result from fire that is communicated therefrom during dry weather, whenever in the opinion of a jury the material is as combustible as that piled on the right of way in this case, or else of refusing to permit such material to be piled upon its right of way unless it has positive assurances that the same will be shipped before the advent of dry weather

and when it is in position to furnish cars for such shipment. It was not found that the railway company was negligent because it failed to maintain a fire patrol or a fire department, but because it permitted the wood to remain on its right of way at all. I can see very little difference between this case and one where a manufacturer of lumber allows lumber to remain in his yard long after it is dry because perchance he is unable to sell it. Sparks from the smokestacks of his saw or planing mill, or from the slab or shavings burners operated in connection therewith, or even from passing locomotives, may start and frequently have started disastrous fires in lumber yards. But it has never been generally supposed that because the lumber was dry and combustible, and slab burners, smokestacks, and locomotives threw sparks,' a right of action existed in favor of a property owner whose property was burned in the conflagration, without showing that the fire was negligently set or negligently permitted to escape. I do not think that the wood involved in this case constituted a nuisance or that the defendant was guilty of an unlawful act in permitting it to remain on its right of way. I think it used its right of way in the usual and ordinary way in which rights of way are used in a timbered country. The decision of the court opens up a broad field for litigation, by holding an act to be tortious which heretofore was not considered so. In Illinois it is held that it is not contributory negligence for a person to stack straw on a railway right of way in close proximity to railway tracks. It is further held that such fact would not justify the trial court in instructing the jury that the burden of proof was on the owner of the straw to show that the act was not a negligent one. *American S. Co. v. C. & A. R. Co.* 177 Ill. 513, 53 N. E. 97. It is also held that it was not negligent for the owner of a barn filled with hay and adjacent to a railway track to leave a window therein open so that sparks from a passing locomotive set the hay on fire. *Cleveland, C., C. & St. L. R. Co. v. Tate,* 104 Ill. App.

615.    In Alabama it is held that depositing cotton on a depot platform and leaving it there three weeks without giving any shipping directions is not negligence as a matter of law. *Southern R. Co. v. Wilson,* 138 Ala. 510, 35 South. 561.    A like ruling is made in *Alabama & V. R. Co. v. Fried,* 81 Miss. 314, 33 South. 74, and in *Railroad Co. v. Short,* 110 Tenn. 713, 77 S. W. 936.    These cases recognize the well known fact that cotton is extremely inflammable.

Dangerous acts are not necessarily negligent ones.    If so, the use of steam threshers would create a liability every time a straw stack was set on fire and the fire was communicated to adjacent property.    One who employs the element of fire to generate steam, or under any other circumstances which render it especially dangerous to others, is held to the exercise of ordinary care only.    *Read v. Morse,* 34 Wis. 315.    And it is held that the true test of the duty of a sawmill owner in regard to preventing the escape of sparks is the use of such appliances as are usually used by men of ordinary care and prudence generally engaged in like business under like circumstances.    *Rylander v. Laursen,* 124 Wis. 2, 102 N. W. 341, and cases cited.    In that case recovery was sought against a sawmill owner by an adjacent property holder whose logs and standing timber were burned because of sparks emitted from the smokestack of defendant's sawmill.    It seems to me that there was no evidence showing want of ordinary care in this case, and that it is a matter of common knowledge among those familiar with conditions and the manner in which business is carried on in the wood-producing section of the state that there was no want of ordinary care.

MARSHALL and VINJE, JJ.    We concur in the foregoing opinion of Mr. Justice BARNES.

A motion for a rehearing was denied January 10, 1911.