HICKS, Respondent, vs. CHICAGO & NORTH WESTERN RAILWAY COMPANY, Appellant.

*May 7—June 5, 1934.*

For the appellant there was a brief by *J. F. Baker* and *Llewellyn Cole,* both of Milwaukee, and oral argument by *Mr. Cole.*

*Fulton Collipp* of Friendship, attorney, and *M. S. King* of Wisconsin Rapids of counsel, for the respondent.

NELSON, J. The principal contentions of the defendant are that the court erred in denying its motions for a nonsuit, for a directed verdict, for judgment notwithstanding the verdict, and in refusing to change the answer of the jury to question number one from "Yes" to "No." All of defendant's contentions are based upon the assertion that the evidence was insufficient to prove to a reasonable certainty that the original fire which concededly spread to plaintiff's premises was set or was communicated directly or indirectly by a locomotive in use upon its railroad. Sec. 192.44, Stats. It will be necessary, therefore, to examine the evidence adduced for the purpose of determining whether there is credible evidence from which the jury might reasonably infer that the fire which ultimately spread to the plaintiff's premises was set by a locomotive belonging to the defendant and in use upon its railroad. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741.

The following facts are undisputed: Defendant's railroad runs in a northwesterly direction from Grand Marsh to Adams. It diagonally crosses sections 36 and 26, cuts across the northeasterly corner of section 27, and runs across the southwesterly diagonal half of section 22, in a certain township. An east-and-west highway runs along the quarter line through section 22. A north-and-south highway runs along the west side of sections 22 and 27. Defendant's railroad crosses the east-and-west highway mentioned about eighty rods east of the west line of section 22. This crossing is referred to in the testimony as the Prazma crossing. In section 26 there is a marsh which concededly was dry on Octo-

ber 6, 1932. The wind on that day was blowing from the southwest to the northeast at a velocity of twenty-one miles per hour. The fire, about which this controversy centers, started on the northerly or easterly side of defendant's track in section 26 and rapidly spread in a northeasterly direction. The plaintiff is the owner of the northwest quarter of section 24, to which the fire spread. A west or north-bound freight train consisting of sixty-nine cars—sixty-two loads and seven empties,—drawn by two locomotives, left Grand Marsh at 11:32 a. m. and arrived at Adams at 11:45. The distance between the two stations is seven miles. The fire started at a point about midway between the two stations. Opposite the place where the fire started the track was level or slightly down-grade in the direction the train was moving. Both locomotives were of a powerful type and either could have hauled the train with comparative ease. October 6th was the last day of the 1932 chicken-hunting season, and hunters in automobiles were observed at the Prazma crossing at the time the freight train passed over it. Both locomotives were inspected at Adams during the afternoon of October 6th and found to be without defects.

The evidence as to when the fire started is conflicting. Both engineers, both firemen, and the brakeman testified that the fire was burning at the time the train approached; that they first observed it when the train was about half a mile or more away; that when they passed it, it was burning north of defendant's right of way, and that the fire was separated from defendant's tracks by an unburned strip or area. Had the jury believed that testimony it reasonably could not have inferred that the fire was set by a locomotive belonging to the defendant, since concededly no other locomotive could have set it.

The plaintiff contends that the jury was not required to believe the testimony of the defendant's employees, but had a right to believe the testimony which we shall now review.

A Mrs. Prazma, who resided on the east-and-west road here-inbefore mentioned, some distance east of the Prazma crossing, was out in her farm yard on October 6, 1932, between ten and twelve o'clock in the forenoon, engaged in splitting wood. At times during the morning she looked in a southeasterly direction toward section 26 and saw no smoke or fire. After the train went by she saw smoke and fire down in that direction. The defendant contends that Mrs. Prazma's testimony was negative in character, was impeached by the physical facts which showed that she was about a mile and a quarter away from the point where the fire started, that between her and such point there were brush and small trees and a small knoll which rendered it impossible for her to see a fire from where she stood in her yard; and that her testimony in other respects was so obviously untrue as to make it incredible. Defendant's arguments would be quite appealing were we permitted to retry the facts. But we can examine the record only for the purpose of ascertaining whether there is any evidence which, if believed by the jury, reasonably permits the inference drawn by it. We think that, looking at all of Mrs. Prazma's testimony a jury might reasonably conclude that she was in a position during the morning of October 6, 1932, and until after the train went by, to·observe whether a fire of the magnitude of this one was burning in the region of section 26; that she was clearly in a position to observe the smoke that must have been present had she looked in the direction of the fire; that she did look in that direction and saw no fire or smoke until after the train went by. Surely her testimony, if believed, would be some evidence that there was no fire, certainly no extensive fire, to the southeast of her farm before the train went by, and that there was a fire in that direction shortly after the train passed.

Mr. Frisch, a highway superintendent, who on October 6, 1932, was working on the north-and-south highway on the

west side of section 27, testified that off and on during the morning he had occasion to glance across sections 27 and 26; that he saw no evidence of fire or smoke in that direction before the train went by; that he glanced across there just about the time when the train went by but saw no evidence of fire or smoke; that he did not notice any smoke or fire right after the train passed but did notice it within ten or fifteen minutes afterwards.

The defendant earnestly contends that the testimony of both Mrs. Prazma and Mr. Frisch is negative in character and should yield to the greater weight of the testimony of the members of the train crew who testified positively that the fire was burning at the time the train passed. It is our opinion that the testimony of Mrs. Prazma and Mr. Frisch was not of that character which properly may be considered negative. While their testimony was negative in form it was positive in character. They both testified that they looked in the direction of the origin of the fire, but saw no evidence of fire until after the train went by, when they observed that a fire was burning. This is not what is generally understood to be negative testimony. *Suts v. Chicago & N. W. R. Co.* 203 Wis. 532, 234 N. W. 715.

Joseph Burian, an emergency fire warden from the state conservation commission, testified that on October 7th, the day after the fire, he went down to defendant's right of way and observed a burned area within the right of way and up to the track; that in places there was grass and rubbish up to within four feet of the ties; that the burned area on the right of way was narrower than farther out.

Burton Lunby, also an employee of the Wisconsin conservation commission, testified that the burned area was continuous from plaintiff's land to defendant's right of way; and that it was narrower upon the right of way.

Earl Koch, a dispatcher and bookkeeper for the Wisconsin conservation commission department at Adams, testified

that he went down the defendant's right of way at about six o'clock in the evening of October 6th; that he found dry grass and stubble on the right of way, and that the fire had burned a very narrow strip on the right of way and then widened out afterwards in section 26.

We conclude that the testimony adduced by the plaintiff made a *prima facie* case as to the setting of the fire, and that therefore the defendant's motion for nonsuit was properly denied.

The plaintiff contends that the testimony given by Mrs. Prazma and Mr. Frisch was corroborated by the testimony of Edward Doyle, Thomas Doyle, and John Buck, members of defendant's section-crew. They set off their motor-car at the Prazma crossing to permit the freight train mentioned to go by. The distance from the place where the fire originated to the Prazma crossing is a little more than a mile and a quarter, and the track between such points is straight. Before the train went by they did not notice any smoke or fire down the track. After the train went by and while the crew was engaged in putting the motor-car back on the track, Thomas Doyle observed the fire. Edward Doyle testified that his attention was first directed to the smoke and fire after the train had passed, and he and his helpers had put the motor-car back on the track. John Buck, the third section-man, testified that he first learned of the fire after the train had gone by.

The jury might reasonably have inferred that, since the section-men were waiting for the freight train to pass, they no doubt would look in the direction from which the train was approaching, and that if a fire had been burning at that time they would have observed it.

There was a very great deal of testimony relating to the inspection of the locomotives in question, their construction, the safeguards employed to prevent the escape of sparks and cinders from the smoke-stacks, and coals or sparks from the

fire-boxes and grates, all of which was adduced for the purpose of showing the improbability, if not impossibility, of any fire being communicated from the locomotives. While the testimony, if believed by the jury, tended to make out a strong defense, we cannot say that it conclusively showed the impossibility of one of the locomotives setting the fire. No suggestion was offered as to the cause of the fire, except the possibility of its having been started by some hunter who may have been in that vicinity. However, no witnesses testified to the presence of hunters in the vicinity of the origin of the fire.

We conclude that the defendant's motion to direct a verdict in its favor was properly denied.

Since the enactment of sec. 192.44, Stats., a plaintiff in an action like this makes out a case when he shows that the fire was set or was communicated, directly or indirectly, by a locomotive in use upon such railroad. The ultimate fact inquired about may be proven circumstantially. In *Suts v. Chicago & N. W. R. Co., supra,* it was held that a jury may reasonably infer that a fire was set by a locomotive from evidence which shows, (1) that there was no fire before a locomotive passed, (2) that a locomotive passed, (3) that a fire existed shortly thereafter, even though the locomotive "was in good order in every respect." In order to prove his case a plaintiff, of course, must show that the fire originated within a reasonable distance from the railroad track, that the grass or other material on the right of way, or reasonably near to it, was sufficiently dry to be set on fire by a live spark or coal, and that the fire occurred within a reasonable time after the locomotive passed. The law of the *Suts Case,* which deals with the inference which a jury may draw from the circumstances, that no fire existed before a locomotive passed, and that one existed shortly thereafter, is in accord with the prior decisions of this court. *Theresa Village Mut. F. Ins. Co. v. Wisconsin Central R. Co.* 144 Wis. 321, 128 N. W. 103;

*Abbot v. Gore,* 74 Wis. 509, 43 N. W. 365; *Beggs v. Chi-,ago, W. & M. R. Co.* 75 Wis. 444, 44 N. W. 633, and *Donovan v. Chicago & N. W. R. Co.* 93 Wis. 373, 67 N. W. 721.

It is our conclusion that the evidence sustains the verdict, and that it was not error to deny defendant's motions after verdict. We cannot say that the verdict of the jury, which was approved by the trial court, is without support in the evidence. Under the established law we may not disturb the verdict.

*By the Court.*—Judgment affirmed.